# HOWARD W. JACKSON

## *vs.*

# THE SHAWINIGAN ELECTRO PRODUCTS COMPANY.

*Nuisances: smoke; damages; other factories, when no defense; market value before and after injury; undeveloped property.*

In an action against the owners of a factory for damages caused by the smoke, fumes and dusts emitted by the plant, the fact that there are other factories or plants nearby does not excuse the defendants if they cause or contribute to the trouble complained of.                                p. 136

Where the suit is to recover damages for a permanent injury, the plaintiff may prove the market value of the property before and after the injury complained of.         pp. 132, 134

If business is carried on in such a manner as to interfere with the reasonable and comfortable enjoyment by another of his property, or to occasion material injury to the property itself, a wrong is done for which damages may be recovered, without regard to the location where such business is carried on.
p. 136

The defendant may show evidence of whatever other causes there were that may have had a depreciative effect upon the property.                                 p. 140

Where the nuisance complained of consists of noxious fumes and smoke, the evidence of a chemist who made an analysis of deposits on the roof and from the rain spouts of houses of the plaintiff's property and of deposits from the chimneys of the defendant's plant, is admissible.               p. 139

*Decided January 16th, 1918.*

Appeal from the Circuit Court for Baltimore County. (MCLANE, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Joseph N. Ulman* and *Clarence A. Tucker* (with whom were *Charles H. Knapp, Lee I. Hecht* and *W. Gill Smith,* on the brief), for the appellant.

*R. R. Carman* and *T. Scott Offutt* (with whom were *Keech, Wright & Lord,* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The appellant sued the appellee for damages alleged to have been sustained by him from the operation of a manufacturing plant in the Twelfth District of Baltimore County, known as a ferro silicon plant for the manufacture of ferro silicon and other products. There are two counts in the declaration. The first, after referring to the ownership of three properties by the plaintiff, alleges that subsequent to his acquisition of them, to wit, in 1915, the defendant erected the plant immediately adjoining two of his properties and near the third, and that since its erection the defendant has operated it continuously day and night; that there are discharged from it large clouds of offensive and unwholesome vapors, noxious fumes and gases and disagreeable soot and smoke, dust and other matter upon the plaintiff's properties; that it also causes a large amount of noise and vibration, and that said offensive and unwholesome vapors, etc., are very injurious to health, as well as offensive to persons of ordinary sensibilities; that said properties were well adapted to improvement for dwelling houses and prior to the erection of the plant, land in the immediate vicinity,

some of which was also owned by plaintiff, was used for such purposes. It is then alleged that by reason of the offensive and unwholesome vapors and foul and disagreeable odors, noxious fumes and gases, soot, smoke, dust, etc., "it is practically impossible for the plaintiff to develop his said properties for dwelling house purposes, and the same are rendered far less desirable for dwelling or other building purposes than they would otherwise be, and the plaintiff is deprived of the profits and advantage that would reasonably inure to him from the development and improvement of his said properties, and the value thereof is seriously impaired, to his great loss and damage." The second count is the same, excepting the nuisance complained of is in reference to a glaring light of great intensity, etc.

After this suit was brought, an agreement was entered into between the parties by which it was agreed that in the trial of the case the plaintiff was to be treated as the owner in fee of all the properties, and that the case should be tried on the theory of a *permanent* nuisance, and all evidence which either party desired to produce which is proper and applicable to a suit involving damages arising out of the erection or maintenance of a permanent nuisance may be introduced. There are 37 bills of exception relating to the admissibility of evidence and one to the ruling on the prayers. The Court granted two prayers at the conclusion of the plaintiff's testimony—the first, that there was no evidence legally sufficient to entitle the plaintiff to recover under the pleadings of the first count, and the second being the same, except it was applicable to the second count. From a judgment on the verdict rendered in accordance with those prayers this appeal was taken.

There can be no doubt that there was legally sufficient evidence of such conditions as would amount to a nuisance, if the property of the appellant was improved, but the appellee contends that the evidence does not show actual physical discomfort or a tangible visible injury to the property, it being

unimproved, and hence it claims that there can be no recovery. There are authorities which have announced the rule in such terms as give some ground for that contention, but when they are applied to such conditions as are alleged to exist in this case there can be no difficulty about them. The attorneys for the appellee quoted from sections 511 and 640 of *Wood on Nuisances* at some length, but the next paragraph of section 511 concludes as follows: "Where there are no buildings upon the premises, but the land is laid out into building lots which, by reason of the nuisance, are reduced in value, a recovery may be had for the difference between the value of the lots with the nuisance there and their value if no nuisance existed." In the note are cited *Peck* v. *Elder*, 3 Sandf. (N. Y. Sup. Ct.) 126, and *Dana* v. *Valentine*, 5 Metc. (Mass.) 8. If that was not so, great injustice would be done owners of vacant land who had begun or intended to develop it. Of course, the fact of the properties of the plaintiffs being improved is of importance in nuisance cases, as when they are improved the plaintiffs can recover certain damages which they can not recover when unimproved, but why a defendant should be made liable to A., who has a house on his lot, but not to B., whose lot is unimproved, if the nuisance in fact lessens the value of B.'s lot, or prevents him from selling it, is not easy to reconcile with the general principle of law that holds the owner of property responsible for so using his property that he injures others.

The plaintiff bought a tract of land in 1910, which was between Baltimore street and Orleans street, on the westerly side of Eighth street. He built 27 houses between Fairmont avenue and Fayette street, which fronted on Eighth street, and has sold all of them. He still owns the rest of the property fronting on Eighth street, some of which is on the northerly and the remainder on the southerly side of the houses he built. He also has a strip back of the houses he sold and a lot on Baltimore street near Eighth. None of the property still owned by him has been improved, but it would be

remarkable if he was prevented from recovering merely because he has sold the improved part, and we do not understand that to be the law of this State. In *Baltimore* v. *Fairfield Im. Co.,* 87 Md. 352, the city was enjoined from placing and keeping on a twenty-acre tract of land by it a woman afflicted with leprosy. That tract adjoined the property of the Fairfield Improvement Co., which had been laid off in building lots. Many of the lots had been sold and quite a number of houses had been built in the vicinity of the city's land. If the improvement company still had any improved property, it does not so appear in the record, and was not relied on in the case, but in the bill it was alleged that it still owned *the lots* which had not been sold. There is nothing in the opinion to indicate that any distinction was made between improved and unimproved property as the ground for relief. It was said by CHIEF JUDGE McSHERRY: "The record abundantly shows that the Fairfield Improvement Company's property will be seriously lessened in value— that residents of the vicinity will abandon their homes—if this unfortunate and afflicted woman should be placed where the city proposes to confine her." In *Belt R. R. Co.* v. *Sattler,* 100 Md. 306, the plaintiff owned two lots of ground— one fronting 100 feet and the other 50 feet on Charles street. There was a house and lot between those two lots which the plaintiff lived in but did not own, and the suit was for injury done to the two *vacant* lots. They were used as a garden and lawn, and contained shade trees, walks, fruit trees, flowers, etc. JUDGE FOWLER, in the course of the opinion, after referring to *Garrett's case,* 79 Md. 277; *Reaney's case,* 42 Md. 117; *Webster's case,* 81 Md. 529, said: "Why there should be any difference made in the right to recover if there is an actual invasion, and when the damage is only consequential, it is difficult to understand, for the damage, loss, inconvenience and discomfort to the owner may be as great in one case as in the other. In *Guest* v. *Church Hill,* 90 Md. 689, we held that the overflowing of the land of an individual

with water is *an invasion* thereof; and the fact that smoke, noise and vapor caused the injury here can make no difference, certainly none in the right to recover." It was proven in that case that in the operation of the railroad smoke and gases were drawn out of two tunnels, between which there was an open cut which plaintiff's property adjoined, and the plaintiff was also subjected to an unusual degree of vibration. It was held that he was entitled to recover damages for the consequential injuries so occasioned, and that testimony of witnesses who were acquainted with the property and had observed the effects of the alleged tort was admissible to prove the fact that the smoke, vapors and vibrations caused a diminution in the value of the plaintiff's property. Not only damages to the trees, flowers, etc., were allowed, but damages for the reduced value of the land. That will be more clearly seen by reference to the case between the same parties in 102 Md. 595, being the second appeal to this Court. JUDGE BURKE, in speaking of the damages, said: "The interference with the reasonable and comfortable use and enjoyment of the property, and any material injury to the property caused by the nuisance, loss of sales or rentals may be, under the facts of the case, proper items of damage for which recovery should be had. In order to prove the extent of loss on sales or rental the plaintiff may be permitted to prove the market value of his property before and after the injury complained of, as that would be the best, and perhaps the most satisfactory, way to enable the jury to judge of the testimony upon a claim for such damages; or such evidence may be receivable to prove the serious nature or character of the wrong complained of, although to introduce such evidence in a case of *temporary* depreciation in the value of property, when no loss of sales or rental is shown, would tend to complicate the case and confuse the issue." Again it was said that the testimony of witnesses who were acquainted with the property and observed the injurious effects caused thereto by the smoke, gas, cinders, etc., emitted from the

defendant's engines was properly admitted. In discussing a prayer which was held to be too general and indefinite, it was said: "If the jury believed the plaintiff's evidence, he was entitled to recover damages for the interference to the reasonable and comfortable enjoyment of his property caused by the defendants, and also for any material injury or destruction of his property." It must not be forgotten that in that case there was no permanent injury involved, and the damages could only be recovered for injuries up to the bringing of the suit, while this case, as shown above, was to be tried on the theory of a *permanent* nuisance. It will be seen from the opinion of JUDGE BURKE that the fact that there was only claimed to be a temporary diminution in the market value of the land was important. Where the suit is for the permanent injury evidence of the market value of the property before and after the injury complained of is proper, as shown from the quotation above. See also quotation from section 511 of *Wood on Nuisances, supra.* It would be difficult to prove the damages with reasonable accuracy in any other way, and if it be true that the defendant is permanently injuring the property of the plaintiff by the smoke, gases and other things described by the witnesses, we can see no valid reason for not permitting it to be done. That case unquestionably establishes the doctrine that there can be a recovery for a diminution of the value of real estate, on which there were trees, flowers, etc., but no houses, and it seems to us it would be utterly illogical to hold that there can be recovery for the damage to the real estate under those circumstances, but can not be merely because it is not shown that there are trees, flowers and such other things as were on the Sattler property.

There is ample evidence to show that before the defendant's plant was put in operation the property was suitable and available for dwelling houses. During or after 1910 and before 1915, when the plant started, the plaintiff had erected and sold twenty-seven dwelling houses in almost the middle

of his property facing on Eighth street, and the depth of the property on that street is such that it would likely be more available for dwellings than for other purposes. If the conditions shown by the testimony are the result of defendant's plant, as the evidence tends to prove, and those conditions are to be continued indefinitely, as the agreement seems to provide for, then clearly there is evidence of *an invasion* of plaintiff's property by the smoke, gases and other things spoken of, and it is said in the *Sattler case,* in 100 Md., *supra,* that such things may be as much an invasion as overflowing land with water, *so far as the right to recover* is concerned. Mr. Merriken testified that "The smoke was dependent largely on the wind, and some came in this direction and that direction, but it seems to precipitate dust and dirt all over this property, depending altogether upon the nature and character and direction of the wind and the atmosphere." Other witnesses testified to the same effect. Can it be that no relief can be granted the owners of vacant land when clouds of such substances are constantly cast upon it—especially in a case where whatever injuries there may be are of a permanent character? The common law, at least when administered under modern conditions, can give but one answer.

In 100 Md., on page 332, it was held that the testimony as to the effects produced by the smoke, etc., in the immediate neighborhood on property other than the plaintiff's was admissible. JUDGE FOWLER said: "How better could the plaintiff establish his case? If his property alone of all others similarly situated was affected and if he alone of all those who lived near the open cut was made uncomfortable, the jury might well have said it was his fault and not that of the defendant. And the only way to show that others and their property were affected in the same way, though perhaps in different degrees, was to show those conditions by those who were personally acquainted with the situation"— citing *Cooper* v. *Randall,* 59 Ill. 317; *Doyle* v. *M. R. Co.,*

128 N. Y. 495. Some fifteen witnesses, who were either owners or occupants of houses built by the plaintiff, testified as to the conditions, and, if they are correct, it is altogether improbable that any new dwellings will be built there, or any lots purchased for such purpose. While of course this plaintiff can not recover for damages sustained by others, it was admissible under the *Sattler case* to introduce the testimony, and inasmuch as at least one of the lots of the plaintiff is between the plant of the defendant and the houses in which those witnesses lived, such evidence was material, pertinent and convincing as to how houses erected on that lot would be affected. A considerable part of another body of land of plaintiff is very near the plant and the other not far from it. Of course, it will be permissible to direct the attention of the jury to the fact, if it be shown to be a fact, that some parts of the property will not be materially injured, even if other parts may be.

The fact that there are other factories or plants near these properties can not excuse the defendant, if it causes or contributes to the trouble complained of. *Woodyear v. Schaefer,* 57 Md. 1; *West Arlington Co. v. Mt. Hope,* 97 Md. 191. If the business is carried on in such manner as to interfere with the reasonable and comfortable enjoyment by another of his property, or occasions material injury to the property itself, a wrong is done to the neighboring one, for which an action will lie, and that too without regard to the location where such business is carried on: *Sus. Fer. Co. v. Malone,* 73 Md. 268; *Sus. Fer. Co. v. Spangler,* 86 Md. 562; although, as said in those and other cases, where parties are engaged in a lawful business in a locality where some discomforts must be expected, other residents can not expect absolute freedom from all disagreeable things, or even from all smoke, noises, etc.

If that was all which was involved in this case, we would not be inclined to reverse the judgment on account of the instruction as to the second count, as there seems to have

been to a considerable extent an abatement of the glaring light complained of. That would seem to be capable of being corrected without much expense, and as it has to a large extent been relieved, and can probably be still more so, there is scarcely enough in the record to show that it is a permanent injury, although we do not mean to preclude the plaintiff from offering evidence under that count in another trial. But we are of the opinion that there was ample evidence to be submitted to the jury under the first count. As the Court struck out the evidence as to the values of the properties after the plant was established, there was no evidence of precise values, but there was evidence tending to show that the property was of less value, by reason of the damage done by the defendant. Mr. Merriken said that "it has affected the value of this particular lot as well as it has affected the entire neighborhood. I want to say this further in explaining myself—that real estate is susceptible of all kinds of changes, to any condition that is unusual, that is extraordinary, will affect the value." We do not understand from the record that that was stricken out, as the Judge struck out the valuations and reasons. If it was stricken out there was clearly error in that ruling. The witness had been permitted to testify as to the values before December, 1915, when the plant commenced operations, and he had been there a number of times to see the effect of the operation of the plant on these particular properties. He had been in the real estate business for twenty-six years, and had been selling property in that vicinity for ten or twelve years. He was therefore qualified to testify whether the property was injured by the plant. The only possible ground for excluding such evidence would be that the jury could tell as well as he could whether it did injure it, but the jury would not likely know as well as an experienced real estate dealer would, what sort of things affected sales of property. But if it be conceded that it would, evidence of the conditions was before the jury and it could determine from that evidence whether the properties

were injured by this plant. If they, or either of them, were, the plaintiff was entitled to some damages. Therefore, the case could not properly be taken from the jury, which prohibited the recovery of even nominal damages. Moreover, Mr. Ferguson testified without objection that "This condition of noise, smoke, light and dust enveloping this whole surrounding section, immediate surrounding section, puts a different phase upon the situation than what it did before. It is a condition entirely different." That witness also said that every time he had been in that section during 1916 he had seen the plant of the appellee "emitting volumes of substances from its smoke stacks and producing considerable noise and light. I have seen the substances from the smoke stacks coming in all directions, north, south, east and west, going up in the air and coming down." In answer to the question, "Have you seen any of it coming down on Jackson's property?" he replied "I have." Such testimony as that proves an actual, visible invasion of the plaintiff's property. But it is useless to quote from the testimony further, and we are of the opinion that there was error in granting the defendant's (appellee's) first prayer.

We will briefly state our conclusions as to the rulings on the testimony. That offered in the first, second and fourth exceptions was admissible. Leslie P. Lehman was an analytical chemist and mining engineer. He had testified that he had samples from the houses built by plaintiff of material which he had seen coming from the plant of the defendant, and had taken the sample from a rain spout on one of the houses. He had also obtained a sample from a stack of the plant. He was asked to take the sample that he had gotten from the stack and state how that compared with the silic oxide in the sample taken from the rain spout. That was objected to and ruled out. Witnesses had testified that the material which came to their houses from the plant of the defendant was very different from that which came from the other industries in the neighborhood, and the object of

the testimony was to show that what was on the houses was of the same kind that came from the stack—thus confirming those witnesses. The second exception was the same as the first, excepting the sample to be compared with the one from the stack was taken from the roof of one of the houses. The fourth was in reference to the result of the analysis of the sample taken from the roof. We think there was error in excluding the evidence in each of those exceptions. The third referred to a sample taken from the roof of a building on Calvert street in the heart of Baltimore City. We do not see the relevency of that and it was properly rejected. The questions in the fifth, sixth, seventh, eighth, ninth, tenth and nineteenth related to the effect of the smoke and gas that came from the plant. Without stopping to pass on the forms of the questions, and other matters which are of a technical character, we think that kind of testimony was admissible. If it could be shown that the smoke and other things which came from the plant were deleterious to health, or produced such conditions as would likely influence people not to purchase lots, the evidence was pertinent and material. Those in the eleventh and twelfth were not admissible. The thirteenth, fourteenth, fifteenth, sixteenth and seventeenth were not pressed. The eighteenth, twenty-fourth and twenty-fifth do not seem to be pressed, as later another witness testified as to the values of the property before the plant was in operation, which those questions related to. The twentieth does not appear to us to be material. In the twenty-first a motion to strike out all the testimony of Mr. Merriken, as to the values of the properties since the plant began operation, was granted. He had testified as to the values of the several properties before the plant was in operation and gave figures as to the present values, owing to the plant. There have been no sales since December, 1915, when the plant started, and evidence of the values after the plant was erected was admissible. Mr. Merriken is an experienced real estate dealer, and was familiar with the properties before

and after the plant was started. Keeping in mind that the suit is to recover damages for a permanent nuisance, the best way to establish them is by proving what the properties were worth before and what they are worth now. If a witness does not give satisfactory reasons for his conclusions the jury would not likely give much credence to his testimony, but one can say what the property is worth now just as well as he can say what it was worth before the plant started and the latter was admitted. Although the rule is definitely settled in this State that the measure of damages is the difference between the value before and that after the injury (*Sattler Cases, supra; West. Md. Ry. Co.* v. *Jacques,* 129 Md. 400, and *West. U. Tel. Co.* v. *Rasche,* 130 Md. 126) of course the defendant is only liable for such difference in value as it caused. It will therefore be admissible for the defendant, on cross-examination or by its own testimony, to show some other cause or causes for depreciation, if there be any, and the jury should be instructed to consider all such circumstances. The application of the rule is not free from difficulty in a case of this kind, in order to prevent the jury from holding the defendant responsible for some diminution it did not cause, and therefore care must be taken to avoid that as far as possible. There was error in striking out the evidence referred to in the twenty-first exception. As the plaintiff had completed the examination in chief, it was in the discretion of the lower Court, to determine whether further examination of the witness should be permitted, and hence there was no error in the twenty-second and twenty-third exceptions. William E. Ferguson was shown to be a real estate dealer of large experience and said he had been familiar with properties in this section for the past ten years, particularly during the last five years, although he resided in Baltimore City. He was familiar with this particular property, and hence we can not agree with the lower Court that he was not qualified to testify as an expert. The question in the twenty-sixth exception was admissible and perti-

nent.  It was "Can you tell us what purposes the Jackson property is adapted for"?  That was a material inquiry, and if he had been permitted to answer, his testimony might have been favorable to defendant.  He may have thought that it was adapted to factories, etc., which would not be affected by the defendant's plant.  If it can be shown that the property is adapted to such things, the jury should be so informed, as such testimony would reflect upon both the fact of diminution *vel non,* and, if found in the affirmative by the jury, the extent of it.  When the question in the twenty-sixth exception was ruled out, the twenty-seventh, twenty-eighth, twenty-ninth and thirtieth became immaterial, except probably to reflect upon the competency of the witness to answer the question in the twenty-sixth.  We find no reason why the inquiries in the thirty-first and thirty-second could not be made.  That in the thirty-third was not in proper form.  The thirty-fourth, thirty-fifth and thirty-sixth were admissible.  Without discussing it further, that in the thirty-seventh was not in proper form—"basing your judgment upon your actual knowledge *of this,*" etc.—just what that refers to is not clear, and we can not say there was error in refusing to permit it to be answered.

For the reasons given the judgment must be reversed.

*Judgment reversed and new trial awarded, the appellee to pay the costs.*