ANNE C. SILBERSTEIN, ET AL. *v.* MASSACHUSETTS
MUTUAL LIFE INSURANCE COMPANY

NATHALIE S. WINKLER *v.* SAME

[No. 16, October Term, 1947.]

*Decided November 3, 1947.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*William Saxton* for the appellants.

*Jacob S. New* and *J. Cookman Boyd* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

These appeals are from a decree cancelling four life insurance policies issued by Massachusetts Mutual Life Insurance Company to Marie A. Silberstein, now deceased. Appellants are her daughters, Anne C. Silberstein and Nathalie S. Winkler, beneficiaries.

On December 8, 1943, Mrs. Silberstein applied to the company's agency in Baltimore for two insurance policies in the amount of $2,500 each. On that day she signed Part 1 of the application, and on January 30, 1944, after her medical examination, she signed Part 2. She certified that she had not had cancer or any tumor during the past 10 years; that all answers and statements in the application were full, complete and true; and that she was in sound physical condition. The two policies were issued by the company, but were later exchanged into four policies for $1,250 each. They were paid by the company, and are not the subject of dispute here.

On April 3, 1944, the insured applied for two additional policies for $1,250 each. The beneficiary in one policy was to be Miss Silberstein, with Mrs. Winkler contingent beneficiary; in the other Mrs. Winkler was to be the beneficiary, with Miss Silberstein contingent beneficiary. The home office in Springfield, Massachusetts, wrote the policies and agreed to issue them upon proper amendment of the original application in lieu of another med-

ical examination. On April 11, 1944, the insured signed the amendment, which certified that since January 30, 1944, she had not had any illness, injury, impairment of health or symptom thereof; that she had not consulted or been attended by a physician; that all answers and statements in the amendment were full, complete and true; and that she was in sound physical condition. The two policies were returned to the home office with the signed amendment, but with two changes made by the applicant. First, she increased her application from two to four policies for $1,250 each, thereby providing for additional insurance for $5,000. Second, she requested that the beneficiary in each policy be Anne C. Silberstein, if living, otherwise to Nathalie S. Winkler. The company's underwriting department issued four policies, but one of them names Mrs. Winkler primary beneficiary, and Miss Silberstein contingent beneficiary.

Objection was made by Mrs. Winkler that, notwithstanding that it was agreed that the application and the amendment should become a part of the contract, nevertheless, since the amendment and the policy designated different beneficiaries, the application and the amendment should not be considered a part of the contract. But it is undeniable that the insurer would not have issued any of the policies except upon the application and the amendment as part of the contract. Presumably the error in the one policy was made inadvertently in the home office. All four policies were issued at the same time, and were duly delivered to the insured. In accordance with the rule prevailing as to contracts generally, the parties to an insurance contract may make such lawful modifications thereof as they may mutually agree upon. Moreover, an insurance policy may be reformed, even after the death of the insured, so as to correct a mistake in the name of the beneficiary of the contract. *Snell v. Atlantic Fire & Marine Insurance Co.*, 98 U. S. 85, 25 L. Ed. 52. But in this case the insured accepted the policies without objection, and kept them until her death. Since the insured accepted them as they were

written, and held them more than a year and a half, Mrs. Winkler, named as beneficiary in the policy, cannot maintain a cause of action on her policy unaffected by the application and the amendment, which the parties clearly intended to form a part of the contract. A somewhat similar situation existed in *Reeder v. Metropolitan Life Insurance Co.*, 340 Pa. 503, 17 A. 2d 879, where it was held that the fact that a life insurance policy was issued in a different amount from that stated in the attached insurance application did not warrant the conclusion that the application was not the one upon which the policy was issued, or that it should not be considered in interpreting the contract.

Mrs. Silberstein died on December 9, 1945, at the age of 46. After proof of death was filed in February, 1946, the company learned that on April 14, 1944, her physician, Dr. Richard W. Te Linde, found a tumor in her left breast about two inches in diameter. She told her physician that it had been giving her pain since she first felt it "a few days before." Dr. Te Linde, diagnosing it as carcinoma, referred her to Dr. Alfred Blalock, a general surgeon, for the reason that breast operations in Johns Hopkins Hospital are performed by the general surgeons, rather than the gynecologists. She entered the hospital on April 17, when she informed the interne, who took her case history, that she noticed the mass in her left breast "two weeks before admission." On April 18 Dr. Blalock, concurring in the diagnosis, performed the operation of removing the patient's left breast. She was discharged in May, 1944, but returned to the hospital in October, 1945, still suffering from carcinoma, which finally resulted in her death.

The insurance company, claiming that Mrs. Silberstein had made material misrepresentations, instituted these suits to cancel the policies and enjoin defendants from making any claim under them. Miss Silberstein filed a cross-bill praying that the insurer be ordered to pay her $3,750. Mrs. Winkler filed a similar cross-bill praying that it be ordered to pay her $1,250. The chan-

cellor passed a decree cancelling the four policies and dismissing the cross-bills.

It is a general rule in the law of contracts that where a party is induced to enter into a transaction with another party which he was under no duty to enter into by means of the latter's fraud or material misrepresentation the transaction is voidable as against the latter and all who stand in no better position. Thus, innocent material misrepresentation, even though not accompanied by negligence, has the same effect as fraud in rendering a contract voidable. 2 *Restatement, Contracts,* sec. 476. We specifically hold that a material misrepresentation by an applicant for life insurance, in reliance upon which a policy is issued, avoids the policy, regardless of whether the misrepresentation was made intentionally or through mistake and in good faith, because it results in the assumption by the insurer of a risk different from that which the applicant led it to suppose it was assuming. *Bankers' Life Insurance Co. v. Miller,* 100 Md. 1, 59 A. 116; *Ætna Life Insurance Co. v. Millar,* 113 Md. 686, 78 A. 483; *Loving v. Mutual Life Insurance Co. of New York,* 140 Md. 173, 117 A. 323; *Metropolitan Life Insurance Co. v. Samis,* 172 Md. 517, 528, 192 A. 335; *Schloss v. Metropolitan Life Insurance Co.,* 177 Md. 191, 199, 9 A. 2d 244. The Maryland Insurance Act expressly provides that whenever an application for a policy of life insurance contains a clause of warranty of the truth of the answers therein contained, no misrepresentation or untrue statement in such application, made in good faith by the applicant, shall effect a forfeiture or be a ground of defense in any suit brought upon any policy issued upon the faith of such application, unless such misrepresentation or untrue statement relates to some matter material to the risk. Laws of 1894, ch. 662; Laws of 1922, ch. 492, Code, art. 48A, sec. 115.

It is well established that an insurer, before the loss insured against occurs, may maintain a suit in equity to cancel the insurance policy procured by fraud or material misrepresentation made by the insured. *Penn Mutual*

*Life Insurance Co. v. Hartle,* 165 Md. 120, 166 A. 614, 91 A. L. R. 1466. In such a case, equitable relief is granted on the ground that there is no immediate remedy at law, and it would be unjust to require the insurer to wait until he is called upon to pay the policy to set up the fraud, as the time may be so remote and uncertain that indispensable witnesses and evidence may disappear. However, it is also a general rule that after the loss insured against has occurred, and a suit at law on the policy is imminent, a court of equity will not cancel the policy on the ground that it was procured by fraud or misrepresentation, where no danger is apparent that the defense to an action at law thereon may be lost or prejudiced, but the defense may be set up and litigated as readily in a suit at law as in equity. *Di Giovanni v. Camden Fire Insurance Ass'n,* 296 U. S. 64, 56 S. Ct. 1, 80 L. Ed. 47. An exception to the general rule is made where there is an incontestable clause in the policy, and there is manifest danger that the defense at law on the policy will be lost or prejudiced if the insurer must wait for action by the insured or beneficiary, who may prefer to wait until the time for contest has expired. Under such circumstances the insurer, who might otherwise suffer loss through the mere inaction of an adversary, may assume the offensive by applying to a court of equity for cancellation of the policy. *American Life Insurance Co. v. Stewart,* 300 U. S. 203, 57 S. Ct. 377, 379, 81 L. Ed. 605, 111 A. L. R. 1268. In the case before us each policy contains a clause that it shall be incontestable after it has been in force for a period of two years from its date of issue. The policies were issued in April, 1944, and thus became incontestable in April, 1946. Inasmuch as the discovery of the misrepresentations was not made until after the proof of death was filed in February, 1946, and there was danger that the insurer would lose its right to make defense, there is no question that it had the right to invoke the aid of equity.

We find that the evidence in this case proves false and material representations. When Mrs. Silberstein applied

for the four policies on April 11, 1944, she certified that she had not had any impairment of health or any symptom thereof since her examination on January 30, 1944, but was in sound physical condition. This was a misrepresentation, for her physician, Dr. Te Linde, testified that there was a tumor in her breast on April 14, and she told him that she had felt it for several days. While he declined to estimate how long the lump had been in her breast, he expressed the opinion that carcinoma existed for some time prior to April 14. When she entered the hospital on April 17, she told the interne that she had noticed the lump in her breast for two weeks, and accordingly he wrote in the hospital records that she first felt the lump on April 3.

We cannot accept the view of appellants that prior to April 14, 1944, their mother had been in good health and had called to see her physician during the period of 10 years only for a "general checkup." The expression "sound physical condition," as used in a life insurance policy, means the absence of any vice in the constitution and of any disease of a serious nature that has a direct tendency to shorten life, as distinguished from a slight or temporary ailment which does not impair the general health. *Mutual Life Insurance Co. v. Willey*, 133 Md. 665, 106 A. 163; *Schloss v. Metropolitan Life Insurance Co.*, 177 Md. 191, 9 A. 2d 244. Dr. Te Linde, who is chief gynecologist in the Johns Hopkins Hospital, first saw Mrs. Silberstein in May, 1934. At that time she was suffering from pain in her right side. In June, 1934, she had a small polypus in the rectum, and in November, 1934, the doctor excised two small polypi. In March, 1936, she had a pain in her breast radiating down the left arm. In 1939 she was treated for a growth in the perineum. In 1941 the doctor cauterized her cervix with an electrical apparatus.

Appellants urged that a lump in the breast may be benign and not dangerous to the general health. Dr. Te Linde stated that it is a debatable question whether a benign lump can exist for a long time and subsequently

become cancerous. However, he made it plain that Mrs. Silberstein was fearful of cancer as far back as 1934, when she was only 35. Of course, an applicant for life insurance is not required to disclose the fact that he has consulted a physician for slight or temporary ailments, such as an ordinary cold or headache. *Kaplan v. Manhattan Life Insurance Co. of New York,* 71 App. D. C. 250, 109 F. 2d 463. The fact that an insured has failed to answer the questions fully as to the ailments from which he has suffered does not constitute a defense to an action on the policy as a matter of law, when there is evidence that the ailments were all minor ones and in no way related to the fatal disease of which he was ignorant. *Mutual Life Insurance Co. of New York v. Held,* 157 Md. 551, 146 A. 755.

But it cannot be maintained here that the tumor in the applicant's breast was a slight or temporary ailment. It is true that it was not diagnosed as malignant until three days after she made her application, nevertheless it is recognized that tumors are often cancerous, and that cancer is a serious disease and the court will take judicial notice that it materially increases the risk of loss by an insurer. *New York Life Insurance Co. v. Zivitz,* 243 Ala. 379, 10 So. 2d 276, 143 A. L .R. 321. In this case the head of the underwriting department stated positively that the company would not have issued any of the four policies if Mrs. Silberstein had disclosed that there was a lump in her breast. A false representation in an application for insurance is material to the risk if it is such as would reasonably influence the insurer's decision as to whether it should insure the applicant. *Commercial Casualty Insurance Co. v. Schmidt,* 166 Md. 562, 171 A. 725.

As the representations of the insured were false and material, the decree of the chancellor cancelling the policies will be affirmed.

*Decree affirmed, with costs.*