# JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY *v.* ADAMS

[No. 159, October Term, 1953.]

214

*Decided July 22, 1954.*

*Motion for rehearing or modification of opinion filed August 9, 1954, denied October 8, 1954.*

216

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Biscoe L. Gray*, with whom were *Knapp, Tucker & Gray* on the brief, for the appellant.

*George M. Radcliffe*, with whom was *Hilary W. Gans* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal by a life insurance company from a judgment against it for the face amount of a policy on the life of the husband of the beneficiary, plus interest on that amount, recovered by the beneficiary, who was the plaintiff below and is the appellee here. The principal controversy is over the ruling of the trial court on the defendant insurance company's demurrer prayers and on its motion for judgment N.O.V. There are also objections to rulings on evidence.

The policy was issued on June 9, 1951, the contestable period under it was two years thereafter and the insured died within that period on February 12, 1952. The causes of death were heart failure and uremia, as shown by the proof of death submitted by the beneficiary in making claim under the policy.

The main controversy grows out of the insured's answers to several questions in the medical portion of the application for the policy, which application formed a part of the contract and was dated May 19, 1951. These questions and answers in brief are as follows:

Question 11 D. "Have you ever had or been told that you had, or consulted or been treated by a physician * * * for pain in the chest [or] shortness of breath * * *?" Answer, "No".

Question 12. "Have you had any X-Ray, electrocardiac or blood examinations or studies?" Answer, "Yes". "X-Ray" in the question was underscored and in the space left for "full details" opposite this answer appears, "Routine chest X-rays since 1931. All negative."

Question 13. "Have you, during the past five years, consulted any physician or other practitioner, or been confined to or treated in any hospital, sanatorium, dispensary, clinic or similar institution not stated in answers to Questions 11 and 12?" Answer, "No."

At the right of the numerous subdivisions of Question 11 and of Questions 12 and 13, in a space headed by instructions calling for "full details" of any of those questions answered "Yes" and calling upon the applicant to specify every illness, injury, deformity or operation with dates, duration, severity, results and the names and addresses of physicians and hospitals, statements (in addition to the report of routine x-rays) showed "Appendectomy 1918. No sequalae. Tonsilectomy 1920" and a three-stage operation performed in 1941, 1942 and 1943 for the removal of a tumor from the right forearm. The name and address of the surgeon who performed this operation or series of operations was given.

The insured had had pains in the chest in February and in October, 1949, and had consulted a physician about them on each of these occasions. On the second occasion, an electrocardiogram was taken. He also consulted a physician on numerous occasions about various ailments within five years prior to the date of the application and these consultations were not disclosed in the application.

The testimony of the insured's physicians whom he consulted on various occasions during the five-year period indicated that certainly most of his ailments were not of a serious nature.

The physician whom the insured consulted about pains in the chest and shortness of breath was Dr. Louis E. Wice. The insured first visited Dr. Wice early in February, 1949, on that occasion informed the doctor

that he was suffering from "morning cough and expectoration" and that he had been treated for some years by Dr. Serra for a nasal condition and some ringing in his ears. He complained of several things, including tenseness and sleeping poorly, and also "of some pain in his chest with a little shortness of breath on exertion." Dr. Wice prescribed a mild sedative and a drug "used to improve breathing and generally to make a man's circulatory system improve." The insured again visited Dr. Wice about two weeks later and in April, 1949. On each of these occasions he seemed better and the treatment formerly prescribed was continued. Twice in February, 1949, Dr. Wice examined the insured under a fluoroscope.

In October, 1949, the insured again visited Dr. Wice. At that time he had a head cold, which had lasted for several days, and he "complained of some pain to the right sternum * * * going through to his back for a few days." During this visit he was again fluoroscoped and on this occasion an electrocardiogram was also made by Dr. Wice. The result of the electrocardiographic examination was negative, and Dr. Wice's opinion was that the insured did not have heart trouble. He diagnosed his trouble as a long standing nasal condition with deviated septum and a low grade bronchial condition. The doctor specifically reassumed the insured on the subject of heart trouble and stated that in his opinion the insured did not have it. He testified the type of pain which the insured had at the time of his October 1949 visit ordinarily would not mean heart trouble.

Dr. Wice also testified as to various tests and factors which would be used or taken into consideration in trying to determine whether or not a man had heart trouble. He described an electrocardiogram as the best means, from a mechanical point of view, in determining whether or not there was anything wrong with the heart, but he also pointed out that a negative result was not conclusive.

The insurance company's associate medical director, who also testified, agreed with Dr. Wice on this point. His testimony also indicated that if the company had been informed of Dr. Wice's examination, it would have communicated with him and asked his diagnosis, but that he would not have been content with a diagnosis based on opinion that there was no heart trouble. He spoke of the experience of his own and other companies with high mortality in heart cases in men over forty as showing the need to be "very careful to get objective evidence of the cause of chest pain other than heart disease" and added, "We do not feel that electrocardiogram, a physical examination, or the opinion of the attending physician is the type of objective information we want to have to establish the health category of such person's heart." This prompted a question from the trial judge as to whether the doctor would accept as a risk any applicant who answered "yes" to the question about pain in the chest and shortness of breath. The doctor's answer indicated that after ten years had passed since an attack "we would assume * * * time would prove that such symptoms did not indicate heart disease." He further stated that "The taking of electrocardiogram or not taking of it would have made very little difference."

When the insurance company's local examining physician examined the insured, no signs of heart trouble were noted.

There is nothing to indicate that the insured believed he had heart trouble when he applied for the policy, and it appears that he did not have any such belief at that time. His first known heart attack, which was severe, occurred a little over a month after he applied for the policy; and his death occurred about seven months after that attack. It was due to heart failure and uremia.

The rules to determine whether cases of this general type are to be submitted to the jury or decided by the court have recently been reviewed and stated in *Baker v. Continental Casualty Co.*, 201 Md. 464, 94 A. 2d 454,

in which the opinion was written by Judge Hammond. Ordinarily and generally, whether a representation is true or false, or material to the risk, is for the jury to determine, and the burden is on the defendant to establish such defenses. Where, however, bad faith or falsity or materiality is shown by uncontradicted or clear and convincing evidence the question may be one of law. If there is a conflict in the evidence, or the evidence is doubtful, the question is one for the jury. The Court, in the *Baker* case, referred to *Richards on Insurance Law*, 3rd Edition, Section 109, page 146, where the author discussed the difference between a representation and a warranty. After pointing out that Code (1951) Article 48A, Section 171 equated the two (and so made the quotation pertinent), the Court then quoted this from *Richards*: "This distinction is better defined in the statement that, if the decisive issue on trial involve an inquiry either as to the substantial truth or as to the materiality of a representation, the right to determine the case is apt to be taken from the Court and carried over to the jury."

The *Baker* case also reviews many of the Maryland authorities dealing with cases of actual or alleged false answers to medical interrogatories so thoroughly that any extensive review of them in this opinion would be largely repetitious and not particularly helpful.

Some cases, such as the *Baker* case itself, turn upon an exact interpretation of the question asked. In the *Baker* case, the submission of the case to the jury was upheld because of the difference between being "treated" by a doctor and being "examined" by a doctor. The actual inquiry there was whether the applicant had "ever had any injury, sickness or physical condition requiring a doctor's care or a surgical operation?" His answer was "Yes, tonsillectomy—1931", which was inferentially an answer of "No" as to anything else referred to in the question. The fact was that he had been having periodical x-ray examinations because of a lung spot of minimal character, which was discovered

as a result of a routine chest x-ray. He was not under any treatment for it and was simply told to have the spot checked at intervals of six months. He later developed tuberculosis. It was held proper for the jury to determine the issue of the truth or falsity of the answer, having in mind the distinction between treatment and examination.

As stated in *Baker v. Continental Casualty Co., supra,* "A material misrepresentation made by an applicant for life insurance in reliance on which a policy is issued to him, avoids the policy, whether it be made intentionally, or through mistake and in good faith." See also *Metropolitan Life Ins. Co. v. Samis,* 172 Md. 517, 192 A. 335; *Schloss v. Metropolitan Life Ins. Co.,* 177 Md. 191, 9 A. 2d 244. The reason has been recently restated in *Silberstein v. Massachusetts Mutual Life Ins. Co.,* 189 Md. 182, 55 A. 2d 334, in which the opinion was written by Judge Delaplaine, and is "because it results in the assumption by the insurer of a risk different from that which the applicant led it to suppose it was assuming."

The chief contentions of the appellant are that the answers of the insured denying (a) that he had ever had pains in the chest or shortness of breath, (b) that he had ever had an electrocardiographic examination, and (c) that within five years he had consulted a physician with regard to those matters, were false and were material, and that on the evidence presented the trial court should have so ruled and accordingly should have directed a verdict for the defendant.

In its brief the appellant takes the position that the three specific questions and the answers thereto upon which the defense is based presented no issue of good faith and asserts that the charge of the trial court was erroneous in submitting that question to the jury, although we do not find any specific exception to the charge on this ground. The charge may have submitted for consideration a defense which the insurance company had not interposed, but this would not seem to have harmed the appellant.

With some possible inconsistency as to the absence of good faith as an issue, the appellant elsewhere in its brief urges certain facts, among them the elaborate procedure involved in making an electrocardiogram, to show that the insured must have been aware of his consultations with Dr. Wice and a Dr. Urlock and that he must have realized that his negative answer to the question about consultation with a physician was "both false and incomplete." We take it that the issue of good faith is not raised for decision on appeal otherwise than as an objection to its having been mentioned in the instructions to the jury, and we shall, therefore, not discuss it further.

It seems to be well settled that the failure to disclose consultations with a physician for minor or temporary ailments will not avoid a policy in a case such as this. See *Aetna Life Ins. Co. v. Millar*, 113 Md. 686, 78 A. 483; *Mutual Life Ins. Co. of N. Y. v. Held, supra; Schloss v. Metropolitan Life Ins. Co., supra;* and *Silberstein v. Massachusetts Mutual Life Ins. Co., supra* (at 189 Md. 190, where there is a concise statement of this rule, though it was not essential to the decision in that case), and Code (1951), Article 48A, Section 171. The *Held* case points out that the minor ailments there involved which were not disclosed, were not connected with the cause of death, and that the insured was ignorant of the condition which was connected with the ultimate cause of his death. In the instant case the pains in the chest and the making of the electrocardiogram may have suggested heart trouble, but the testimony is clear that the insured believed, as did his physician, that the pains in his chest were due to a bronchial cause and not to heart disease and that the electrocardiogram showed nothing to indicate that there was anything wrong with his heart. See the *Schloss* case and the discussion of it below.

The crux of the case is the materiality of the misstatements. What constitutes materiality has been defined rather often. It is thus succinctly stated in *Silber-*

*stein v. Massachusetts Mutual Life Ins. Co., supra* (at p. 190 of 189 Md.): "A false representation in an application for insurance is material to the risk if it is such as would reasonably influence the insurer's decision as to whether it should insure the applicant." See also *Commercial Casualty Ins. Co. v. Schmidt,* 166 Md. 562, 171 A. 725.

In *Prudential Insurance Co. v. Shumaker,* 178 Md. 189, 12 A. 2d 618, one of the questions giving rise to the controversy inquired about "palpitation of the heart, shortness of breath, pain in the chest or heart disease." That case, however, turned on the correctness and not the materiality of the answer given by the insured. The answer had been written by the insurance company's medical examiner and was claimed by the company to be "No." What was actually written was an undecipherable symbol, which apparently neither the insured nor anyone else (except the person who wrote it) could read or interpret; and there was testimony from persons present when the answer was given that the insured had answered fully and truthfully.

Reverting to the rule restated in the *Baker* case as to when the court should decide the issue of materiality, it can do so only when materiality is shown by uncontradicted or clear and convincing evidence. The testimony of the company's associate medical director is strong and positive as to the danger signal given by pains in the chest. Dr. Wice, on the other hand, thought that the pain in the chest about which the insured consulted him at the time of making the electrocardiogram would ordinarily not mean heart trouble and would not mean that there was "any involvement to his circulatory system." Both he and the insurance company's associate medical director agreed with regard to the inconclusiveness of an electrocardiogram showing a negative result. By way of contrast, there could hardly be room for any question as to materiality of concealment of known "patent, serious and organic" ailments in such cases as *Silberstein v. Massachusetts Mutual Life Ins.*

Co., supra (known lump in breast which proved to be cancer), Bankers Life Ins. Co. v. Miller, 100 Md. 1, 59 A. 116 (operation for a malignant growth), Mutual Life Ins. Co. v. Mullan, 107 Md. 457, 69 A. 385 (drunkard long treated for alcoholism representing himself as temperate), Loving v. Mutual Life Ins. Co., 140 Md. 173, 117 A. 323 (concealment of tubercular condition), and Metropolitan Life Ins. Co. v. Samis, 172 Md. 517, 192 A. 335 (fibroid tumor for two years developing into cancer causing death).

In the Held case, where the insured's physician knew that the insured had arteriosclerosis but the insured did not, and the insured failed to disclose consultations with his doctor about minor ailments, the question of materiality was held to have been properly left to the jury.

In Schloss v. Metropolitan Life Ins. Co., 177 Md. 191, 9 A. 2d 244, the insured answered "No" to an inquiry whether she had ever had "cancer or other tumor" and also to an inquiry whether she had been "attended" by a physician within a certain time. Within a few days before she signed the medical examination she had consulted her family physician twice about a pain in her left shoulder, which he diagnosed as a swelling of the axillary glands. At some date not clearly shown, but before the policy was actually issued, her family physician advised her to see a surgeon because the glands were getting larger and he thought they should be taken out. She did consult a surgeon, and about six weeks after the policy was issued he performed an operation to remove the glands. Prior to that operation neither of the doctors thought that cancer was involved, but the operation disclosed its existence. Death resulted from cancer and (perhaps) pneumonia in less than a year after the issuance of the policy. The family physician testified that in the light of what the operation disclosed, he thought that the carcinoma probably existed at the time when he was first consulted about the swollen glands. The trial court directed a verdict for the defendant insurance company, and this Court reversed the judgment

entered thereon, holding that the answers above stated were not "false and material as matters of law."

In the light of the testimony in this case showing some divergence of opinion as to the significance of pains in the chest and little regard by even the company's own home office medical representative for negative results of an electrocardiographic examination, we are of the opinion that the learned trial judge did not err in submitting the question of the materiality of the misstatements to the jury.

The appellant has also objected to several rulings of the trial court on evidence. We find no error in any of them. As to one it appears that the particular question objected to was not answered. The other two involved rebuttal testimony intended to show the good faith of the plaintiff-beneficiary and of her deceased husband, the insured. We think it was relevant for that purpose and that it was within the discretion of the trial court to admit such testimony at that stage of the trial. See *Jackson v. Shawinigan Electro Products Co.,* 132 Md. 128, 140, 103 A. 453.

In accordance with the views above stated, the judgment is affirmed.

*Judgment affirmed, with costs.*

DELAPLAINE, J., dissents.