NATIONWIDE MUTUAL INSURANCE COMPANY
*v.* McBRIETY

[No. 363, September Term, 1966.]

*Decided June 1, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER and McWILLIAMS, JJ.

*John W. T. Webb,* with whom were *Webb, Anderson & Burnett* on the brief, for appellant.

*Frederick P. McBriety,* for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

Nationwide Mutual Insurance Company (the insurer) denies liability under a major medical policy issued by it to Mrs. Eleanor Hall McBriety (the insured) because of the insured's alleged failure to disclose material information as to her prior medical history in her application for the policy. After the policy was issued, the insured was operated upon for an ulcer condition. She made demand upon the insurer for the expenses involved, the amount of which is not in dispute. The insurer, upon discovery of the alleged misrepresentations, claimed the right to rescind the contract and tendered the amount of the premiums paid, which was refused. Suit was filed by the insured in the Circuit Court for Dorchester County. The case was tried before a judge without a jury, and resulted in a judgment for the insured.

The application for the policy was signed by the insured at the McBriety home on June 7, 1964. The insured and her husband had previously discussed the policy with John P. Tobin, a local agent for the insurer. Tobin, by arrangement, came to the insured's home and the application was completed in the living-room. Tobin filled it out and the insured then signed it.

The application was printed and contained a number of questions with two columns of squares opposite each question, under the headings "Yes" and "No". The questions were answered by the insertion of crosses in the squares. Question 6e asked whether the insured had "consulted or been treated by a physician or other practitioner during the past 5 years?" Question 7 asked whether the insured had ever had, or ever been medically treated for or advised by a doctor or other practitioner that she had "a. disease or disorder of * * * intestines or

stomach? * * * c. hernia, cancer, ulcer * * *? f. any disease, disorder, injury or operation not previously mentioned?" Each of these questions was answered "No".

These answers, the insurer contends, constituted misrepresentations material to the risk. The insurer does not claim the misrepresentations were fraudulent or made in bad faith, but contends that the findings of the trial court that they were not material misrepresentations were clearly erroneous and that the judgment for the insured should be reversed and judgment entered for the insurer. It contends, further, that the court erred in excluding testimony as to the position which would have been taken by the insurer if it had had the true facts before it issued the policy and that, because of this error, in any event, there should be a new trial.

A threshold question is presented by the denial of the insured at the trial that Tobin asked her any of the questions the answers to which are claimed to be incorrect, when Tobin filled out the application. The insured also testified that she did not read the application, as filled out by Tobin, before signing it. Tobin testified that his standard method of completing applications was to go through the form, questioning the applicant and writing the answers to the questions as indicated by the applicant, but he did not specifically recall asking the insured the particular questions involved in this case. Tobin admitted signing the certification on the application that he had "truly and accurately recorded the Proposed Insured's answers * * *."

Above the insured's signature to the application is a printed statement which begins as follows: "I represent that the above answers are complete and true to the best of my knowledge and belief." The policy provided that the insurer accepted the coverage "in consideration of the payment of the premium and the statements in the application, a copy of which is attached and made a part hereof." The policy further contained a provision that the insured had ten days from the receipt of the policy to examine it, and to return it and to receive a refund of any premiums paid. The application was attached to the policy, and the policy was promptly delivered to either the insured or to her husband for her.

In *Commercial Cas. Ins. Co. v. Schmidt*, 166 Md. 562, 171

Atl. 725 (1934), the plaintiff's testimony was that the company's agent had foisted on his company an application other than one which the plaintiff had signed. The plaintiff did not know of the false answers because he did not see them in the original forms of application and did not read the final policy containing them after he had received it. Nevertheless, the Court reversed a judgment for the plaintiff, without a new trial. Chief Judge Bond said, for the Court, "fair dealing requires of the applicant or insured some care on his own part to see that his application does not misrepresent the facts." 166 Md. at 571. *Metropolitan Life Ins. Co. v. Samis,* 172 Md. 517, 192 Atl. 335 (1937), is to the same effect. On the facts in the present case, the insured is bound by the answers to the questions in the application which she signed.

The only fact as to her medical history to which the insured referred in the answers to the questions on the application was a hysterectomy performed on her in 1953. She denied that she had consulted or been treated by a physician during the five years prior to the date of the application. The facts admitted by her in her testimony are as follows: In February, 1963, she consulted Dr. Lawrence Maryanov at his office in Cambridge, Maryland, about a stomach complaint. The doctor prescribed certain medication and put the insured on a "bland diet." Later that month, the insured returned to the doctor's office, where she was given a "G.I." series of X-ray and other tests. As a result of these tests, she was told by Doctor Maryanov that she "had a scarred duodenal cap and spasms of pylorus." She was given medication, which she took for a month, and her diet was continued. Thereafter, she was given a blood sugar test every six months. On June 6, 1964, the day before she signed the application for the policy, the insured again went to the doctor, and complained of the same sort of nervous stomach and upset feeling which she had at the time of her first visit in February, 1963.

Dr. Maryanov was more specific as to the actual dates. His records showed the insured had first consulted him about her stomach condition on February 27, 1963. The G.I. tests were performed on March 9, 1963. The doctor saw the insured again

in connection with her stomach ailment on March 22, 1963, and again, on June 6, 1964.

The doctor testified in detail as to the nature of the insured's condition at these various times and the gastric ulcer for which she was operated on in April, 1965. He did not suspect that she had a gastric ulcer prior to that time. In his prior examinations, before the issuance of the policy, he had found that she had a scarred cap, which indicated an old duodenal ulcer. In the view we take of the case, we find it unnecessary to consider whether the answers to question 7, as to whether the insured had been treated for disease or disorder of intestines or stomach, were material misrepresentations.

Kenneth Brewer, the Division Manager in the insurer's Health Selection Department, explained the procedure followed with respect to an application for a major medical policy. He testified that, in view of the insured's negative answer to question 6e in the application, as to treatment by or consultation with a physician within the last five years, there was no medical follow up. The only history reported was the hysterectomy in April, 1953, and, because of the length of time which had elapsed since that operation, it was not pursued for medical details. If the answer to question 6e had been in the affirmative, the agent would have been requested to obtain from the insured the names and addresses of the doctors. If Brewer had known the facts as to which Dr. Maryanov had testified, he would have requested a report from him before the policy was issued. Brewer was then asked the following question:

> "Now, under your standard underwriting procedure, had you received that information what official position then would the company have taken under the normal underwriting procedure with respect to the issuance of the policy?"

The court sustained an objection to the question. Counsel for the insurer then made a proffer that, if permitted to answer the question, Brewer would have testified as follows:

> "The company would have offered the policy with an exception or waiver in the policy which would have

excluded any claim arising out of 'gastroenteritis or any disease or dysfunction of the stomach and intestines, any complication thereof, treatment or operation therefor.' "

and that Brewer would have testified further that if the policy were not accepted with the exception described, the insurer would have refused the application and refunded the premiums.

The sustaining of the objection was prejudicial error. Code (1964 Replacement Volume), Article 48A, § 374, provides in pertinent part:

"All statements and descriptions in any application for a * * * health insurance policy, * * * by or on behalf of the insured * * *, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under such policy or contract unless either:

(1) Fraudulent; or

(2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(3) The insurer in good faith would * * * not have issued * * * the policy or contract, or would not have issued a policy or contract in as large an amount, or at the same premium or rate, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."

The issue of materiality depends upon whether the misrepresentation of the true facts would reasonably have affected the determination of the acceptability of the risk. *Continental Cas. Co. v. Pfeifer*, 246 Md. 628, 229 A. 2d 422 (1967), and cases therein cited. Brewer's testimony was admissible and relevant as to the materiality of the misrepresentation in the answer to question 6e.

In his opinion, Judge Mace indicated that, for there to be a material misrepresentation, there must be some intention to

deceive. The cases do not so hold. In *Silberstein v. Massachusetts Mut. Life Ins. Co.*, 189 Md. 182, 55 A. 2d 334 (1947), Judge Delaplaine, for the Court, stated the law in this State as follows:

> "We specifically hold that a material misrepresentation by an applicant for life insurance, in reliance upon which a policy is issued, avoids the policy, regardless of whether the misrepresentation was made intentionally or through mistake and in good faith, because it results in the assumption by the insurer of a risk different from that which the applicant led it to suppose it was assuming." 189 Md. at 187.

*Hancock Mut. Life Ins. Co. v. Adams*, 205 Md. 213, 221, 107 A. 2d 111 (1954), is to the same effect.

As Judge Mace stated, the failure to disclose consultations with a physician for minor or temporary ailments will not avoid a policy. *Hancock Mut. Life Ins. Co. v. Adams, supra*, at 205 Md. 222, and cases therein cited. His opinion is based, in part, on the finding, express or implied, that the ailments as to which the insured had consulted a physician were only minor or temporary. When there is a conflict in the evidence as to whether a representation is true or false or the evidence is doubtful, the question is one for the trier of the facts, but when the falsity or materiality is shown by clear and convincing or uncontradicted evidence, the question is to be decided as a matter of law. *Pfeifer, supra*, and cases therein cited.

In this case, had the proffered evidence as to the materiality of the misrepresentation contained in the answer to question 6e been admitted, as it should have been, and had that testimony not been contradicted, we believe that, on the uncontradicted evidence, the misrepresentation was material as a matter of law.

The holding of the court below that the answer to question 6e was only a failure to disclose minor or temporary ailments was clearly erroneous. During the period of less than 16 months before the signing of the application, the insured had consulted or been treated four times by a physician for stomach distress. She admitted that the doctor had told her she had a scarred

duodenal cap and spasms of the pylorus, the opening from the stomach into the intestines. She was given the series of "G.I." tests, an experience not lightly to be forgotten, and, under the doctor's instruction, had a blood test taken every six months. She was given medication and put on a diet. She visited the doctor the day before she signed the application, for the same complaint about which she had come to him more than a year before.

In the light of these uncontradicted facts, the insured's denial that she had consulted or been treated by a physician within the preceding five years was clearly a misrepresentation, and with Brewer's proffered testimony, a material misrepresentation. The question put to her was simple and direct, unlike the broad, general question in *Baker v. Continental Cas. Co.*, 201 Md. 464, 94 A. 2d 454 (1953), which was whether the applicant had ever had any sickness or physical condition requiring a doctor's care. In *Hancock Mut. Life Ins. Co. v. Adams, supra,* while the insured had incorrectly denied any consultations with doctors during the last five years, the testimony of his physicians indicated that certainly most of his ailments were not of a serious nature. There was no such testimony in this case. No two cases in this field of the law are entirely similar, but we believe that the situation here presented is analogous to that in *Monumental Life Ins. Co. v. Taylor*, 212 Md. 202, 129 A. 2d 103 (1957), and in *Silberstein, supra,* in which the misrepresentations were held material as a matter of law.

The proffer of Brewer's answer to the question put to him as to what would have been the insurer's position if it had known the actual facts as to the insured's prior consultations with and treatment by physicians is not the equivalent of sworn testimony. If the testimony had been admitted, Brewer would have been subject to cross-examination, and the insured would have had the opportunity to offer contradicting evidence, if any was available. For this reason, the case must be remanded for a new trial.

*Judgment reversed; case remanded for a new trial in accordance with the above opinion; costs to be paid by appellee.*