194 So.2d 272 (1967)
CONTINENTAL CASUALTY COMPANY, Appellant,
v.
Evelyn GOLD, Appellee.
No. 35480.
Supreme Court of Florida.
January 6, 1967.
Rehearing Denied February 14, 1967.
Henry Burnett and Fowler, White, Gillen, Humkey & Trenam, Miami, for appellant.
Talburt & Kubicki, Miami, for appellee.
*273 ERVIN, Justice.
This appeal was transferred here by the District Court of Appeal, Third District, pursuant to F.A.R. 2.1, subd. a(5) (d), 31 F.S.A., because the trial court passed on the validity of F.S. § 627.0127, F.S.A. We accept jurisdiction.
Evelyn Gold, the Appellee, sued Continental Casualty Company, the Appellant, in the Civil Court of Record of Dade County on a hospital policy issued by Appellant for certain benefits arising from her hospitalization on June 9th and 10th, 1964. The policy, effective April 15, 1964, provided specified benefits for "injury or sickness." Appellee's claim was for "sickness." Sickness covered by the policy is sickness commencing after the policy had been in effect thirty days.
The sole issue at trial was whether plaintiff Evelyn Gold's sickness commenced thirty days or more subsequent to the effective date of the policy. Plaintiff testified she had symptoms of severe backaches and frequent urination which resulted in her undergoing medical examination and consultation that lead to her hospitalization on June 9 and 10, 1964. She said the symptoms commenced approximately May 18, 1964. The hospital records reflect plaintiff stated that for the last several months she had been having vaginal discomfort and pain in the lower back. The treating physician reported to the hospital at the time of her admission that plaintiff had noticed said symptoms about "two months ago."
The trial judge instructed the jury that one is regarded as sick only when his diseased condition has advanced far enough to incapacitate him.
The jury after deliberating for a time returned to the courtroom to inquire when the testimony indicated plaintiff had last worked on her job. The inquiry was not answered by the trial judge because of the absence of any testimony on this point prior to the time the jury retired to consider its verdict. The jury returned to the jury room and rendered its verdict in favor of plaintiff. Final judgment in her favor ensued.
In the proceedings in the trial court the Appellant insurer preserved two points for appeal, viz.: (1) Is proof of incapacity from work a prerequisite to prove sickness? (2) Is F.S. § 627.0127, F.S.A., pertaining to assessment of attorney's fees against an insurer, unconstitutional?
We will dispose of Point 2 first. F.S. Section 627.0127, F.S.A. reads as follows:
"Attorney fee.  Upon the rendition of a judgment or decree by any of the courts of this state against an insurer in favor of an insured or the named beneficiary under a policy or contract executed by the insurer, the trial judge shall adjudge or decree against the insurer and in favor of the insured or beneficiary, a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had. Except, that without any prejudice or effect whatsoever as to suits relating to other kinds of insurance, no such attorney fee shall be allowed in any such suit based on a claim arising under a life insurance policy or annuity contract if such suit was commenced prior to expiration of sixty days after proof of the claim was duly filed with the insurer. Where so awarded compensation or fees of the attorney shall be included in the judgment or decree rendered in the case."
Appellant contends said statute is unconstitutional because it denies insurers due process of law and the equal protection of law afforded by the State and Federal constitutions. It points out the earliest version of this statute was enacted in 1893 in response to times and conditions then existing, citing early Florida cases upholding it. Appellant contends that due to changed conditions the assessment of attorney's fees pursuant to said statute is an unconstitutional penalty and argues that:
"In 1893, the distances and difficulties of communication between local insureds and *274 insurance corporations, frequently many hundreds of miles away, raised special hazards and risks for the public which could not otherwise be protected than through a statute of this nature. The courts wisely, then, and even later, recognized the peculiar hardships commonly experienced by beneficiaries of insurance policies when payment did not follow promptly after a loss experienced under it. * * *"
Appellant also argues the statute is violative of the equal protection of law guarantee because
"* * * the Legislature has not seen fit to equalize the duties, obligations and burdens between the insurance companies dealing in general insurance matters and insurance companies dealing in matters of surety bonds under similar conditions and circumstances. * * *"
In support of these contentions Appellant cites a number of cases, among which are Atlantic Coastline Railway Company v. Ivey, (1941) 148 Fla. 680, 5 So.2d 244, 139 A.L.R. 973, and Georgia Southern & Florida Railway Company v. Seven-Up Bottling Company of Southeast Georgia (Fla. 1965), 175 So.2d 39. In the first cited case our Court declared invalid a statute requiring the fencing of the right-of-way of a railway and allowing without proof of negligence double damages and attorney's fees as a measure of recovery in cases of injury to livestock. The rationale of the holding was that the statute was enacted when there were no paved highways or automobiles in the state and substantially all freight and passenger traffic moved by railroad. At the time of the decision there were thousands of miles of paved highways and thousands of automobiles and hundreds of buses and trucks in competition with the railroads and there was more likelihood of injury to personal property by reason of collision of motor vehicles on the public highways with livestock than there was of injury by collision of a train with livestock. The Court concluded that a statute valid when enacted may become invalid by a change in conditions to which it applied. Similarly, in the second case cited the comparative negligence statute, F.S. § 768.06, F.S.A., applying to railroads, was declared invalid because of changed conditions of which our Court took judicial notice.
We do not believe the situations in the cited cases are sufficiently analogous in point of legal principles to the facts herein to warrant a finding that changed conditions invalidate F.S. § 627.0127, F.S.A. We recognize that the insurance industry now insures a multitude of risks which were not contemplated when the first version of § 627.0127 was enacted; that there is much closer supervision of the industry by state regulation; that great progress has been made in improving procedures for the prompt settlement of claims and that communication problems existing at the turn of the century are no longer obstacles to the prompt submission, investigation and settlement of claims. Nevertheless, we are unable from our study of this case or from facts of which we can take judicial notice to hold that changed conditions in the insurance industry no longer justify the statutory imposition of attorney fees to lend impetus to the prompt processing and payment of insureds' claims after the period for proof and investigation on the part of the insurer has expired.
Accordingly, we feel we should adhere to our decisions heretofore rendered upholding or applying F.S. § 627.0127, F.S.A. See: Hartford Fire Ins. Co. v. Redding, 47 Fla. 228, 37 So. 62, 67 L.R.A. 518; L'Engle v. Scottish Union & National Fire Ins. Co., 48 Fla. 82, 37 So. 462, 67 L.R.A. 581; Supreme Lodge KP v. Lipscomb, 50 Fla. 406, 90 So. 637; United States Fire Ins. Co. v. Dickerson, 82 Fla. 442, 90 So. 613; New York Life Ins. Co. v. Lecks, 122 Fla. 127, 165 So. 50; Mid-Continent Casualty Company v. Guiliano, Fla., 166 So.2d 443.
The great weight of authority in other jurisdictions supports the constitutionality of statutes of the type of F.S. § 627.0127, F.S. *275 A. In 29 Am.Jur., Insurance, § 1687, the text on pages 777 and 778 reads:
"§ 1697.  Statutory Damages or Penalties, Generally.  In some jurisdictions, statutes have been enacted making insurance companies liable for damages and attorneys' fees in cases of a failure or delay in bad faith in paying a claim, or for a failure to pay claims against them within a specified period after they have accrued. While there have been some cases to the contrary, consisting chiefly of a few earlier cases which have been overruled, such statutes are now generally held valid and enforceable, and are held not to deny the insurance companies of due process of law or the equal protection of the laws, even though there is not a like imposition of damages and fees upon unsuccessful claimants upon insurance contracts. * * *"
Under Point 1 Appellant contends the trial court erred in giving the jury the following instruction over defendant's (Appellant's) objection:
"* * * While the word `sickness' is technically synonymous with such words as `disease,' it is popularly differentiated in this way: One is not ordinarily considered sick who performs his usual occupation, though some organ of the body may be affected; he is regarded as sick, when that diseased condition has advanced far enough to incapacitate him. * *" United Security Life Insurance Co. v. Sikes, 40 Ala.App. 677, 122 So.2d 289, p. 293.
The pertinent provision of the hospital policy reads:
"`Sickness' wherever used in this policy means sickness or disease contracted and commencing after this policy has been in force for not less than thirty days after its effective date as to the person whose sickness is the basis of claim and resulting in loss covered by this policy."
With the foregoing in mind we note the sole factual issue to be determined at trial was whether the sickness involved was contracted and commenced thirty days after the effective date of the policy, or more specifically, whether it was contracted and commenced subsequent to May 15, 1964. The plaintiff testified the symptoms resulting in medical consultation and subsequent surgery commenced approximately May 18, 1964, but the hospital records in two instances reflected in fact that such symptoms commenced two or more months prior to June 9, 1964, which would have been April 9, 1964 or before. Accordingly, the jury was presented with conflicting evidence as to when the condition causing hospitalization first became manifest. The Appellant complains that the foregoing quoted instruction effectively removed from the jury's consideration the question of whether the plaintiff's sickness under the policy occurred thirty days after the policy's effective date, since it was told as a matter of law plaintiff's sickness did not commence until she had in fact become incapacitated from performing her usual occupation. The issue then is one of correct definition of "sickness" as used in the policy. If it means that plaintiff's sickness could have commenced when the earliest symptoms of her malady appeared which were noted in the treating physician's reports to the hospital and reflected in its records, viz., that her symptoms commenced two or more months prior to June 9, 1964, then the instruction should not have been given. Absent the instruction the jury would have been at liberty to find that plaintiff's "sickness" occurred prior to the time she was incapacitated to perform her usual occupation and that the policy did not apply.
We note from the briefs and our studies that there is a conflict of authorities pertaining to this particular issue. However, we are inclined to believe that the weight of authority supports the trial court's instruction.
In 29 Am.Jur., Insurance, § 1154, 301, the text reads:
"The words `sickness' and `disease' are technically synonymous, but when given the *276 popular meaning as required in construing a contract of insurance, `sickness' is a condition interfering with one's usual activities, whereas disease may exist without such result; in other words, one is not ordinarily considered sick who performs his usual occupation, though some organ of the body may be affected, but is regarded as sick when such diseased condition has advanced far enough to incapacitate him." We believe this is the general rule that governs this case; it supports the trial judge's ruling. The insurer could have protected itself in the terms of the policy in this particular had it deemed it advisable, by limiting its liability solely to a "disease" originating after a certain time stated in the policy or by stipulating that it did not cover "sickness" whose symptoms appeared prior to the effective date of the policy. This it did not do. It used the term "sickness" interchangeably with "disease" in respect to the time of its liability and, as we have seen, this word connotes incapacitation to perform one's usual occupation. See again 29 Am.Jur., Insurance, § 1154, page 301, to the effect that in a situation of this kind the construction of the policy should favor the insured. The text there reads in part:
"In determining what losses are covered by policies insuring against losses on account of disease or sickness, the general rule that ambiguous or uncertain provisions will be construed most favorably to the insured is applied. * * *"
Finally, we are not inclined to reverse the cause because there was no precise proof when plaintiff last worked on her job. True, this point disturbed the jury and it returned to the courtroom to ascertain what the evidence disclosed thereon. It found there had been no evidence submitted by either of the parties before they rested their cases concerning when the plaintiff last worked on her job. However, plaintiff did prove she was hospitalized on June 9th and 10th, 1964 and a reasonable inference may be drawn therefrom that those were the dates when she was incapacitated. Moreover, the defendant could have cross-examined her on the subject or submitted evidence of its own to bring out that she was incapacitated sooner than June 9th and 10th (in fact, the transcript shows the parties stipulated plaintiff was hospitalized June 9, 1964  Tr. 53), but the record of the trial discloses that the defendant did neither (Tr. 55, et seq.). Moreover, the defendant did not make any defensive motion during the course of the trial based upon the subject of the jury's said inquiry.
Affirmed.
THORNAL, C.J., and THOMAS, ROBERTS, DREW and CALDWELL, JJ., concur.
O'CONNELL, J., concurs in part and dissents in part.
O'CONNELL, Justice (concurring in part and dissenting in part).
I concur in that part of Mr. Justice Ervin's opinion holding F.S. Sec. 627.0127, F.S.A. to be constitutional. I dissent from the remainder of the opinion.