## MUTUAL OF OMAHA, MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION v. GOLDFINGER

[No. 316, September Term, 1968.]

*Decided June 25, 1969.*

*Motion for rehearing filed July 23, 1969; denied September 8, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, MCWILLIAMS, FINAN and SINGLEY, JJ.

*William A. Fisher, Jr.,* with whom were *William D. Macmillan* and *Semmes, Bowen & Semmes* on the brief, for appellant.

*A. David Gomborov,* with whom were *Sidney Schlachman* and *Gomborov, Steinberg & Schlachman* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

Mutual of Omaha, Mutual Benefit Health & Accident Association (Mutual of Omaha) appeals from a judgment for $3,538.38 entered following the granting of Goldfinger's motion for a directed verdict in his suit against Mutual of Omaha on a "Hospital, Nurse, Medical

and Surgical Expense" policy which it had written. Mutual of Omaha would have us reverse the judgment because, it says, (i) the application for the policy contained a material misrepresentation, and (ii) the medical expenses for which recovery was had resulted from an illness which was contracted prior to the issuance of the policy.

On 9 July 1962, Goldfinger applied for and Mutual of Omaha issued the policy which covered Goldfinger and his wife, Rena. By the terms of the policy, the insurer undertook to pay 75% of hospital and medical expenses, subject to certain exceptions not here relevant, incurred by either of them in excess of a deductible amount of $500 and up to a maximum amount of $10,000.

From 18 August 1963 to 5 October 1963, Mrs. Goldfinger was a patient at Sinai Hospital in Baltimore, where she accumulated hospital and medical expenses of $5,217.85, the reasonableness of which was stipulated. After first deducting $500 and then taking 75% of the balance, the resulting amount was $3,538.38, for which Goldfinger demanded reimbursement.

The policy application contained the question:

> "1. Have you or any Dependents ever had, or been told you had, or received advice or treatment for: (circle conditions answered 'yes' and give details below)
>
> * * *
>
> (b) Lung or other respiratory trouble; stomach, gall bladder, intestinal or rectal trouble; rupture; diabetes?"

Mr. Goldfinger answered question 1 (b) "Yes"; circled the word "stomach"; and completed the form:

| "name | condition, injury or symptom of ill health (if operation performed, state type) | date and duration | degree of recovery | name and address of hospital and attending physician, if any |
|---|---|---|---|---|
| Rena | Ulcers—Removed Surgically | 1946 | Complete | Dr. M. Sherry" |

In his testimony, Goldfinger categorically denied that he had written the phrase "Removed Surgically" on the application form, and insisted that it was not on the form when he signed it. An examination of the form clearly indicates that it is in a handwriting different from any other on the application.

Admitted into evidence without objection was a letter from Dr. Milton Sherry, the Goldfingers' family physician, which supplemented the answers to interrogatories propounded by Mutual of Omaha. Dr. Sherry said that he had treated Mrs. Goldfinger for a duodenal ulcer in 1948, 1956 and 1958; that she had consulted him again in 1961, at which time he suspected that her symptoms might be attributable to something other than a duodenal ulcer, and that the x-rays taken at that time were interpreted by the radiologist as indicating a papilloma, polyp or solitary stone of the gall bladder. This tentative diagnosis was not communicated to Mrs. Goldfinger, however, since in a short time her symptoms had disappeared. On 13 April 1963, Mrs. Goldfinger again saw Dr. Sherry. She was treated until 13 August and on 18 August was admitted to Sinai Hospital, where a cholecystectomy was performed, a hiatus hernia was repaired, and she was found to have a polyp on her gall bladder as well as cholecystitis. Because of post-operative complications, a prolonged period of hospitalization followed.

On this set of facts, Mutual of Omaha contends that there was a material misrepresentation in the policy application, which disclosed only that Mrs. Goldfinger had been treated for an ulcer in 1946 and that her recovery had been "complete." There is the further contention that her hospitalization in 1963 had been for the correction of a condition which existed at the time when the policy was applied for, which was excluded from coverage by the policy's definition of "sickness" as meaning "sickness contracted while this policy is in force."

Mutual of Omaha's own witness, William Brukner, its assistant chief underwriter testified:

"Q Now, Mr. Brukner, if you had known that

[Mrs. Goldfinger] had ulcers in the past and if you had known that her hospital records revealed that off and on for fifteen years prior to August of 1963 she was suffering from recurrent episodes of epigastric pains, what would the company have done with respect to issuing a policy?

"A  Well, since there are many reasons which can cause epigastric pains, we would have gotten medical information from the attending physician.

"Q  If the Doctor's reports had shown that she was suffering from a chronic duodenal ulcer, what would the company have done with respect to issuing a policy?

"A  The company would have put out an elimination endorsement for stomach trouble, for duodenal ulcers."

What Mr. Brukner was saying, in other words, was that, had his company been put on notice with respect to Mrs. Goldfinger's recurring episodes of epigastric distress, a rider would have been attached to the policy meaning, as he put it, "that the company will not pay benefits in the event that the affected party would go to the hospital for this condition again. The company will not pay any benefits for that condition under those circumstances."

On cross examination, Mr. Brukner testified:

"Q  If I have a policy and it has a stomach and ulcer exception, and I have a gall bladder condition, am I covered or am I not?

"A  If you have a gall bladder condition?

"Q  Yes.

"A  Yes, sir, you are covered because the policy primarily states for the exclusion of stomach trouble, or duodenal ulcer.

"Q So that gall bladder is not covered by that elimination endorsement. Correct?

"A That's correct, sir."

What Brukner's testimony means to us is that, had there been a disclosure of recurring episodes of epigastric pains, the policy would have been written with a rider eliminating an illness resulting from a duodenal ulcer from the policy coverage but that a policy written with such a rider would not deprive the insured of benefits should hospitalization result from a gall bladder condition. This lays at rest Mutual of Omaha's first contention that there had been a misrepresentation. As we said in *Monumental Life Ins. Co. v. Taylor,* 212 Md. 202, 129 A. 2d 103 (1957) :

> "The rule with reference to materiality in cases of this kind is not exactly '* * * whether disability of any sort is proved to have existed at the time of making the application, but whether the misrepresentations of the true facts would reasonably have affected the determination of the acceptability of the risk.' " (Quoting *Commercial Cas. Ins. Co. v. Schmidt,* 166 Md. 562, 171 A. 725 (1934) ). 212 Md. at 213

*See also, John Hancock Mut. Life Ins. Co. v. Adams,* 205 Md. 213, 107 A. 2d 111 (1954) ; *Silberstein v. Mass. Mut. Life Ins. Co.,* 189 Md. 182, 55 A. 2d 334 (1947) ; and Maryland Code (1957) Art. 48 A § 211 (C), which was in force at the time the Goldfinger policy was written:

> "The falsity of any statement in the application for any policy covered by this subtitle may not bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer."

Since by Mutual of Omaha's own admission the risk or hazard for which recovery is sought was not affected by

the misrepresentation, we cannot say that the policy was voided.

Mutual of Omaha's second contention, that the medical expenses resulted from an illness which existed prior to the issuance of the policy and were therefore beyond the limits of coverage, is not persuasive.

"In consequence of the distinction between 'sickness' and 'disease,' there is coverage under a 'sickness' policy of a 'sickness' which first manifests itself during the period of the policy even though it is traceable to a diseased condition which antedated the policy, absent any element of fraud or breach of warranty or condition, etc., which would make the policy void or voidable. That is, it is generally recognized that provisions in a health or hospital insurance policy requiring that the illness or disease from which the insured suffers originate a specified time after the date of the policy to be within the policy coveage as strictly construed against the insurer, and the illness, disease, or disability will ordinarily be deemed to have its inception when it first becomes manifest or active, or when there is a distinct symptom or condition from which one learned in medicine can with reasonable accuracy diagnose the disease." 10 Couch, *Cyclopedia of Insurance Law* (2d Ed. 1962) § 41:814 at 639.

*See also,* 1A Appleman, *Insurance Law and Practice* (1965) § 406 at 96. Dr. Sherry *suspected* a gall bladder condition, but did not share his suspicions with Mrs. Goldfinger. It was stipulated that the radiologist to whom Mrs. Goldfinger was referred would have testified "that he could not state as a matter of reasonable medical certainty that this entry in the Sinai Hospital record showed gall bladder trouble requiring treatment, but that this entry could indicate a mere suspicion of a condition requiring gall bladder treatment, or it could indicate a

fortuitous shadow of no significance." The trial judge was unable to find "any medical evidence based on reasonable medical certainty, which would permit the jury to find that some condition of the gall bladder existed which required treatment before the issuance of the policy." It was not until a year after the policy was issued that the particular "sickness" became "manifest or active, or * * * there [was] a distinct symptom or condition from which one learned in medicine [could] with reasonable accuracy diagnose the disease."

Had Mrs. Goldfinger been hospitalized for the treatment of a duodenal ulcer, we would take a different view of the case. *Nationwide Mut. Ins. Co. v. McBriety,* 246 Md. 738, 230 A. 2d 81 (1967). Under the facts before us, however, the issues of materiality and pre-existing sickness were not jury questions, but matters of law, and Goldfinger's motion for a directed verdict was properly granted.

*Judgment affirmed; costs to be paid by appellant.*