HENDRY, Judge.
This is an appeal by Continental Casualty Company from an adverse final judgment on a disability insurance contract.
Plaintiff, Harry J. Fooden, sued Continental to recover benefits under a policy issued by the latter on December 4, 1969. The plaintiff claimed a total disability resulting from surgery to correct an insufficiency of the right carotid artery. The operation was performed on March IS, 1971 by Dr. Harold Spear, who on September 18, 1970 also had performed a left femoral endarterectomy on the plaintiff. At the time of the first operation, Dr. Spear had discovered a moderate degree of carotid insufficiency, however the doctor did not think it warranted surgery at that time.
The record reveals that plaintiff’s heart problems were first experienced approximately in 1965. Plaintiff suffers from ar-teriosclerotic cardiovascular disease.
On November 12. 1969, less than one month prior to the issuance of the insurance policy, the plaintiff consulted Dr. Robert Bass who tentatively diagnosed a right carotid insufficiency and ordered an arteriogram. The arteriogram was “normal.” Plaintiff’s next consultation was with Dr. Robert Willner on May 30, 1970 who eventually referred him to Dr. Spear on August 7, 1970 when the plaintiff complained of pain in his left leg.
*759 Dr. Spear testified that during the March 15th operation a piece of ulcerated material apparently broke loose within the carotid artery and traveled to plaintiff’s brain. As a result, plaintiff came out of surgery with a paralysis of his left arm. The record contains the following testimony by Dr. Spear:
“Q. . . As a result of your care and treatment of this patient, do you have an opinion, based upon reasonable medical certainty or probability, as to whether he [the plaintiff] is disabled from the conditions for which you treated him?
“A. He is disabled from the standpoint of his stroke problem. When last we saw him, he obviously, had residual stroke problems.
“Q. Are we talking about the stroke which he suffered some six years prior to the time you saw him?
“A. No. I am talking about the disability primarily of the left arm which he sustained after the surgery of March IS, 1971.”
Based upon the medical records and testimony submitted by deposition, and mem-oranda of law from counsel, the trial court entered judgment in favor of plaintiff for $9,600 plus costs and attorney’s fees.
Appellant argues that there was no evidence from which the court could have concluded that the plaintiff’s disability arose from anything other than a pre-ex-isting condition as it was defined in the policy.
The policy provides that “sickness” as defined therein shall not mean a sickness or disease caused by or resulting from a preexisting condition.
Pre-existing condition is defined in the policy as “a condition for which medical treatment was rendered or recommended by a current licensed physician or surgeon within 12 months prior to the effective date of insurance as to the Insured. A condition shall no longer be considered pre-existing after the lapse of a period of twelve consecutive months commencing and ending after the effective date of the insurance as to the Insured during which period there has been no medical treatment rendered or recommended for such condition.”
According to the appellant, since plaintiff undeniably had heart disease some five years prior to the effective date of the insurance policy and in fact consulted a doctor within twelve months prior to the issuance of the policy, he does not fall within the definition of “sickness” in the policy.
However, this argument ignores language in the policy in the immediately preceding sentence: “ ‘Sickness’ wherever used in the policy means sickness or disease which causes disability covered by the policy commencing while the policy is in force as to the Insured.”
In our view this case falls within the rule enunciated in Continental Casualty Company v. Gold, Fla.1967, 194 So.2d 272 that in determining what losses are covered by an insurance policy insuring against loss due to sickness or disease, ambiguous or uncertain provisions will be construed in favor of the insured.
Similarly, provisions in such policies which require that a sickness or disease originate at some specified time after the policy takes effect in order to provide coverage are strictly construed against the insurer. See, Annot., 53 ALR2d 686, 689; Boyle v. Springfield Life Ins. Co., Cir.Ct. 1972, 38 Fla.Supp. 84, aff’d Springfield Life Ins. Co. v. Boyle, Fla.App.1973, 272 So.2d 826.
In Continental Casualty Company v. Gold, supra, the Supreme Court stated that the word “sickness” connotes a diseased condition which has advanced far enough to incapacitate an individual from performing his usual activities.
In this case, Dr. Spear testified that arteriosclerosis, which afflicted the plaintiff, *760 is “an inescapable part of aging” which everyone develops to some degree. Dr. Spear further described the disease as “segmental” which at different times may affect certain vessels and involve only specific areas of the body.
We think the evidence in this case establishes that the “sickness” which disabled the plaintiff became active and was diagnosed by Dr. Spear after the policy became effective. The incapacity to plaintiff’s left arm was not manifested until after the March 15th operation.
Therefore, for the reasons stated and upon the authorities cited, the judgment appealed is affirmed.
Affirmed.