421 So.2d 566 (1982)
PREFERRED RISK LIFE INSURANCE COMPANY, an Iowa Corporation, Appellant,
v.
Carl E. SANDE, Individually and As Natural Guardian of Kimberly Lynn Sande, Appellee.
No. 81-1083.
District Court of Appeal of Florida, Fifth District.
September 29, 1982.
Rehearing Denied November 8, 1982.
*567 Russell K. Dickson, Jr., of Akerman, Senterfitt & Eidson, Orlando, for appellant.
R.K. Roberson of Roberson & Roberson, DeLand, for appellees.
COBB, Judge.
The issue in this case is whether the trial court erred by allowing recovery under a major medical insurance policy. We hold it did and reverse.
On July 19, 1976, Mrs. Marsha Sande took her daughter Kimberly to Dr. George Wiggins for a routine physical. Dr. Wiggins found a urinary tract infection which was confirmed after tests on July 23, 1976. In April 1977, Mrs. Sande again took Kimberly to Dr. Wiggins with a high fever. Dr. Wiggins again found that a urinary tract infection was present, and recommended that Mrs. Sande take her daughter to a urologist for a complete evaluation. Mrs. Sande took her daughter to a specialist on November 22, 1977, complaining of recurrent kidney infections, as well as problem bed wetting. The specialist, Dr. Lankford, admitted Kimberly to the hospital on December 1, 1977, where it was found she had a mild urethal stenosis and an ectopic left ureter. This was an anatomical defect which was present at birth, and which was causing her urinary tract infection. This condition was corrected by surgery on January 24, 1978.
On October 6, 1977, appellee, Carl Sande, applied for a major medical expense policy for his family with appellant, Preferred Risk Life Insurance Company. The Preferred Risk agent filled out the application after asking Sande the questions that appeared on it. Of particular importance is question number 7(j), which asked:
Have you, or any person named in question 1, ever had, to the best of your knowledge or belief:
(j) gall bladder, liver, kidney or bladder trouble.
The answer to this is marked "yes" and in the space provided below for explanation, the only mention of any problem in this area is of a kidney infection his wife had in 1972. No mention is made of the problems that Kimberly had or of her visits with Dr. Wiggins.
On January 16, 1978, Mrs. Sande completed and signed a claim form for benefits relating to her daughter's treatment from Dr. Lankford. Initially, Mrs. Sande had left blank question number 5, which asked, "Have you ever been treated for this condition at any time previous to this? If yes, when?" Upon receipt of this, Preferred sent it back and requested the form be completed. Mrs. Sande did so and answered "yes" and added April 15, 1977, as the date of treatment.
Appellant then reviewed the claim and denied it on the basis that the condition was treated previous to the policy, and was therefore excluded. Preferred sent a letter to the Sandes to this effect. The policy was later terminated following no response from the Sandes as to the letter and a failure to pay the required premiums. The Sandes then instituted this litigation to recover under the policy by filing a complaint on March 11, 1980.
Prior to the non-jury trial, depositions of Drs. Wiggins and Lankford were taken. Dr. Wiggins acknowledged seeing Kimberly in July of 1976 and April of 1977, and stated that he informed Mrs. Sande to get a specialist to examine Kimberly, and advised her of the possibility of an anatomic disorder. He stated he felt the disorder for which Kimberly was operated on became symptomatic in 1976, and was recurring since, with the condition being present since birth. Dr. Lankford testified that while other disorders could cause urinary tract infections of the type Kimberly was having, the true cause was the anatomic disorder, and further there was no way of knowing of such a disorder conclusively without the tests he ultimately performed in December of 1977.
At the trial, Mr. Sande testified that he was unaware of Kimberly's urinary tract *568 infections at the time he applied for the policy, but had answered all the questions asked of him, and stated that all the answers given were recorded by the agent. Mrs. Sande testified that she had never told her husband about the persistent urinary tract infections, and that he would not have been aware of it.
An underwriter for Preferred, William Gates, testified that it was company policy for the agents to ask the questions and fill out the forms, and it was properly done here. He further testified that at the time the policy was approved he was unaware that Kimberly had been treated for urinary tract infections, and that if he had known, the policy would not have been issued in the manner it was. Gates stated that had the company been aware of the condition, they would have issued a specific exclusion rider, which would have excluded the impairment from coverage. He further testified that in a juvenile a recurring urinary tract infection is looked at more closely than in an adult.
Following the hearing, the judge entered final judgment for the Sandes in the total sum of $2,215.66. No explanation for the finding is seen in the judgment itself, but in a letter to counsel, the judge stated that he felt there was not a material misrepresentation in the filling out of the application, and found that the infection was indeed a "covered sickness" within the meaning of the policy, since it was possible that it was caused by more than one illness.
The first issue on appeal is whether Kimberly's illness is in fact covered by the policy. The policy defines "covered sickness" as: "sickness first manifested while this policy is in force." Appellant claims the trial court erred since Kimberly's illness is not covered, as it manifested itself prior to the policy becoming effective and was therefore excluded by the policy terms.
While the Florida courts have never specifically defined what "manifested" means, the accepted definition seems to center around the symptoms:[1]
That point in time when the sickness or disease becomes symptomatic and not necessarily when the exact nature of sickness or disease is diagnosed by a physician after extensive testing.
McDaniel v. State Farm Mut. Ins. Co., 3 Kan. App. 2d 174, 591 P.2d 1094 (1979).
In McDaniel, the insured had the symptoms of the illness some two months before the policy was bought, but it was not actually diagnosed until a month after purchase. The court held that the condition was pre-existing, since the symptoms would have led a physician to diagnose the illness; the insured's unawareness as to the exact cause of the disease was unimportant. The court noted that if the insured had gone for the tests prior to the purchase of the policy, when the symptoms first began, she would have gotten the same diagnosis as she received following the tests.
Florida courts have not dealt with the definition of the word "manifest" as directly as McDaniel. In Continental Casualty v. Gold, 194 So.2d 272 (Fla. 1967), the court held that sickness meant a disabling illness, as opposed merely to disease, thereby seemingly prohibiting a disease from being seen here, unless Kimberly was disabled by it.[2] However, the court notes that the insurer may protect itself and limit liability by stipulating in the policy that it did not cover a sickness whose symptoms appear prior to the effective date of the policy. That is exactly what the policy here provides for, so under Continental it would seemingly allow *569 for the insurer to deny recovery. The court in Continental implies that symptoms do equal manifestation; this reading is further supported by a portion of the opinion where the court, discussing the doubt as to when the symptoms began, states: "The jury was presented with conflicting evidence as to when the condition causing hospitalization first became manifest." Continental, 194 So.2d at 275.
In Massachusetts Casualty Ins. Co. v. Forman, 516 F.2d 425 (5th Cir.1975), cert. denied, 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976), the court equated manifestation with when the illness can normally be discoverable by reasonable medical investigation. If it manifests before the policy goes into effect, it is never within the policy coverage. Forman's force and applicability, however, is lessened by the facts of the case since the disease was clearly diagnosed before the policy provision took effect, whereas in the instant case no diagnosis occurred.
In Daniel v. Orange State Life Ins. Co., 403 So.2d 438 (Fla. 2d DCA 1981), the court reversed a summary judgment granted for the insurance company, holding that the issue of when the illness manifested itself was one for the jury, not for the judge, in light of all the circumstances of the case.[3]Daniel can be distinguished from the instant case. Here, the symptoms that Kimberly suffered were not attributable to a natural cause; the mother was aware of a problem, and had even been advised to seek a specialist's treatment prior to the issuance of the policy. The fact that Kimberly was treated within the twelve months prior to the policy becoming effective shows a stronger case for its being a pre-existing condition under the policy terms than was the one in Daniel, where no treatment occurred prior to the policy's effective date.
Here, the trial judge improperly found that the illness had not manifested itself prior to the effective date of the policy. The symptoms were clearly present in Kimberly and a complete diagnosis of the anatomic problem could have been made had Mrs. Sande gone to the specialist prior to the policy date. If she had done so, then clearly it would not have been covered. Her delay in waiting until after the policy was in force should not allow for a recovery.
Denial of recovery on the policy is further warranted due to the appellee's answers to the questions on the insurance application. In the application, Mr. Sande failed to mention any treatment that Kimberly had for her urinary tract infections, or even the name of the doctor treating her for the recurrent problem. Section 627.409, Florida Statutes (1981), allows for a denial of recovery if the misrepresentation made in a policy is such that the insurer's conduct would have changed in reliance on it.[4] Bad faith or fraud is not needed to prevent recovery for misrepresentation; it is only *570 necessary that the misrepresentation either be material to the acceptance of the risk or that the insured in good faith would not have issued the policy in the terms it was issued. There is no need for knowledge of incorrectness and untruth to vitiate the coverage. Life Ins. Co. of Virginia v. Shifflet, 201 So.2d 715 (Fla. 1967).
Appellee relies on Justice Irvin's concurrence in National Standard Life Ins. Co. v. Permenter, 204 So.2d 206 (Fla. 1967), to claim that the strict rule of Shifflet should not apply. Under Permenter, to vitiate coverage, an incorrect statement must be one given by the insured in response to a question he understood or reasonably should have understood, or one which reasonably he could be expected to have sufficient information to answer or state he lacked knowledge to give a responsive answer. Permenter, 204 So.2d at 207. The instant facts do not present a case where the language is referring to some special field or asking for an opinion relating to a question that can only be answered by a medical expert; rather, this is a subject where only a straight-forward question was asked, and where no information that was material was given.
Appellee attempts to assert that the materiality of the misrepresentation is a fact question. This is true when there is a dispute as to what was asked by the agent when the policy was issued or the accuracy of the answers on the application itself. Beneby v. Midland Nat'l. Life Ins. Co., 402 So.2d 1193 (Fla. 3d DCA 1981); Travelers Ins. Co. v. Zimmerman, 309 So.2d 569 (Fla. 3d DCA 1975). Mr. Sande acknowledged at trial that the policy application accurately reflected what occurred at his meeting with the agent; therefore, no factual dispute is present. Furthermore, the insurer presented uncontroverted testimony that if it had known of Kimberly's condition it would not have issued the policy in the form it was issued, but would have placed an exclusionary rider on the policy for her disorder. It is therefore proper to see this misrepresentation as material as a matter of law, law that the trial judge improperly applied by allowing recovery for the appellee. See Minnesota Mutual Life Ins. Co. v. Candelore, 416 So.2d 1149 (Fla. 5th DCA 1982).
It is clear here that a misrepresentation occurred, one that was relied upon by the insurance company in the issuance of the policy; the fact that it was possibly innocently made does not detract from its materiality, and therefore under section 627.409 recovery should have been denied.
Appellee's claim that the action by the insurance company in denying their claim should be dismissed based upon the incontestability clause is without merit. Incontestability clauses come into effect when the claim of the insurer relates to the validity of the policy, not when it relates only to the limitations of coverage. Home Life Ins. Co. v. Regueira, 313 So.2d 438 (Fla. 2d DCA 1975), cert. denied, 328 So.2d 844 (Fla. 1976). Here, there was no attempt by either side to vitiate the policy; rather, the insurance company was only attempting to limit the coverage for this one condition of this one party under the insurance policy. This is not barred by the incontestability clause and the insurance company should be allowed to defend its claim.
The trial court erred by entering judgment for the Sandes. Since the illness had manifested itself prior to the policy being in force, it was therefore excluded from its coverage. Furthermore, the misrepresentations on the policy application were material as a matter of law, and allowed for the denial of recovery under the policy for the child's illness. Therefore, the judgment is reversed and the cause remanded for entry of judgment in favor of appellant, Preferred Risk Life Insurance Company.
REVERSED AND REMANDED.
COWART, J., concurs.
DAUKSCH, J., dissents with opinion.
DAUKSCH, Judge, dissenting:
I respectfully dissent.
The question of the materiality of the alleged misrepresentation is a fact question to be decided upon the basis of all of the *571 evidence before the trier of fact. That issue was decided adverse to the appellant and this court should honor the trial judge's findings. The majority's reference to the fact that "the insurer presented uncontroverted testimony that ... it would not have issued the policy" rings rather hollow to me. Of course that is the insurer's position and who could controvert what is in the mind of another? As in all cases involving factual dispute, the "incontrovertible" can be controverted by objective review of all the other facts. Thus one's announced "intent" can be disproved by his actions to the contrary. Even though this court may disagree with the trial judge's findings we should not supplant them with ours. I would affirm.
NOTES
[1] A majority of the cases recognize that a sickness should be deemed to have its inception at the time it first manifested itself or became active, or when there is a distinct symptom or condition from which one learned in medicine can with reasonable accuracy diagnose the illness. Annot., 94 A.L.R.3d 990, 998 (1979).
[2] The provision of the policy in Continental Casualty read as follows:

Sickness, wherever used in this policy, means sickness or disease contracted and commencing after this policy has been in force for not less than thirty days after its effective date as to the person whose sickness is the basis of claim and resulting in loss covered by this policy.
[3] In Daniel, the symptoms were experienced by the insured about one year before the policy was taken out, though she thought that these symptoms were regular and possibly caused by the fact that she had changed jobs and was doing different work. She initially contacted the doctor twelve days after the policy became effective. The doctor performed tests which led to the discovery of a tumor later removed by surgery. This disease was seen by the insurance company as manifesting itself prior to the policy becoming effective, and therefore coverage was denied.
[4] Section 627.409 provides in part:

(1) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
(a) fraudulent; or
(b) material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
(c) the insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.