DELL, Judge.
These appeals arise out of a claim for reimbursement of medical expenses under a group health insurance policy. In Case No. 90-1547, appellant Northwestern National Life Insurance Company appeals from a final judgment awarding appellees $10,000 plus interest for medical expenses. Appellees cross-appeal the trial court’s finding that Myrtle Rutta’s symptoms were directly related to her surgery and predated her coverage. In Case No. 90-3093, Northwestern National Life Insurance Company appeals from a final order awarding appellees attorney's fees incurred in their claim to recover medical expenses. We consolidate these related appeals.
*685 In 1982, appellant issued a group health insurance policy to Quail Ridge Property Owners’ Association, Inc. The policy covered James Rutta, an employee of the association. On October 16, 1984, Myrtle Rutta became an insured dependent under her husband’s policy. On December 21, 1984, an orthopedic surgeon admitted Mrs. Rutta to the hospital. She had a myelogram which disclosed a herniated cervical disc. On January 4, 1985, she had disc surgery. She made a claim for reimbursement of all medical expenses incurred from the time the policy became effective through her surgery. Appellant denied the claim based upon the preexisting condition provisions of its policy.[1] The trial court found in its final judgment that:
Myrtle Rutta received medical treatment for complaints of left shoulder and arm pain commencing in September, 1984 and continuing until she underwent surgery for a herniated cervical disc on January 4, 1985. Myrtle Rutta’s complains [sic] and pain continued increasingly and una-batedly until the surgery on January 4, 1985. The greater weight of the evidence leads the Court to conclude that Ms. Rutta’s complaints of pain commencing in September 1984 were directly related to, and in connection with, the condition for which she underwent surgery on January 4, 1985.
The trial court concluded that the group insurance plan fell within the provisions of the Employee Retirement Income Security Act of 1974 (“ERISA”), 29 U.S.C. Section 1002(1) and that appellee had established that she received treatment for a “sickness” covered under the terms of the plan. The trial court also concluded that appellee had exhibited symptoms of the “sickness” prior to the effective date of the policy and continued to incur medical expenses related to that “sickness” after the effective date of the policy. The trial court nevertheless held that no “sickness" existed prior to appellee becoming an insured under the plan because she was not incapacitated and was able to perform her usual occupation prior to her coverage. The policy defined “sickness” as a “physical illness,” but the court found that the terms were synonymous here. The trial court applied the definition of “sickness” as defined in Continental Casualty Co. v. Gold, 194 So.2d 272 (Fla.1967): “a diseased condition that has advanced far enough to incapacitate the insured so that the insured is not able to perform his or her usual occupation.” The trial court then determined that the policy should be construed in favor of the insured since the policy contained an ambiguity in the definition of “sickness” and failed to expressly provide that it did not cover a “sickness” even though the symptoms appeared prior to the effective date of the policy.
Appellant contends that ERISA preempts state law and requires that federal common law be applied to its insurance plan. Appellant also contends that the trial court erred when it concluded that the preexisting condition clause in its policy was ambiguous and therefore inapplicable to appel-lees’ claim. We agree and reverse.
We will first address appellees’ argument on cross-appeal. Appellees argue that the trial court found, contrary to the manifest weight of the evidence, that Mrs. Rutta’s complaints of pain, before she became an insured under the policy, were directly related to the condition for which she underwent surgery. We reject appel- *686 lees’ argument since the record contains ample evidence to support the trial court’s finding. Mrs. Rutta first sought medical treatment for pain in her left shoulder and arm in September, 1984. She again received treatment on October 2, 1984 and October 12, 1984. She became an insured under the policy on October 16, 1984. The medical reports, hospital records, answers to interrogatories and deposition testimony of Mrs. Rutta furnish substantial competent evidence to support the trial court’s conclusion that her condition preexisted her coverage under the policy.
Next, we find merit in appellant’s argument that ERISA preempts state law and requires the application of federal common law when interpreting its health insurance plan. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Appellees’ argument that appellant failed to preserve this argument for appeal lacks merit. The record shows that appellant raised the ERISA preemption argument in response to appellees’ amended complaint, the parties agreed in the pretrial stipulation that ERISA governed this policy and appellant persisted throughout the proceedings in its argument that ERISA controlled the interpretation of this contract. We find, it significant that the trial court found in its final judgment that ERISA governed the provisions of the group insurance plan.
The trial court, however, found ambiguity in the policy, applied Florida law and concluded that the term “sickness” must be defined in conformity with the supreme court’s decision in Gold wherein the supreme court approved the definition set forth in 29 Am.Jur., Insurance § 1154, 301:
“The words ‘sickness’ and ‘disease’ are technically synonymous, but when given the popular meaning as required in construing a contract of insurance, ‘sickness’ is a condition interfering with one’s usual activities, whereas disease may exist without such result; in other words, one is not ordinarily considered sick who performs his usual occupation, though some organ of the body may be affected, but is regarded as sick when such diseased condition has advanced far enough to incapacitate him.” We believe this is the general rule that governs this case; it supports the trial judge’s ruling. The insurer could have protected itself in the terms of the policy in this particular had it deemed it advisable, by limiting its liability solely to a “disease” originating after a certain time stated in the policy or by stipulating that it did not cover “sickness” whose symptoms appeared prior to the effective date of the policy.
Gold, 194 So.2d at 275-76. The application of the Gold definition of “sickness” compels the conclusion that since appellee had not lost time from work prior to her coverage under the policy, her complaints and treatment, though properly found to be related to the surgery that she received in January of 1985, did not fall within the preexisting condition definition of “sickness.” On the other hand, because she was incapacitated and hospitalized for her surgery, her confinement came within the insuring provisions of the policy. The cases interpreting similar policy provisions under ERISA require a contrary result. In Evans v. Safeco Life Ins. Co., 916 F.2d 1437 (9th Cir.1990), the court held:
We interpret terms in ERISA insurance policies “in an ordinary and popular sense as would a [person] of average intelligence and experience.” We will “not artificially create ambiguity where none exists.” “If a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy.”
Id. at 1441 (citations omitted).
Several other cases cited by appellant interpreting policies governed by ERISA hold that “sickness” exists when it first manifests itself. See Cury v. Colonial Life Ins. Co., 737 F.Supp. 847 (E.D.Pa.1990); Lawrence v. Northwestern Nat’l. Life Ins. Co., 716 F.Supp. 883 (D.Md.1989); Vance v. Aetna Life Ins. Co., 714 F.Supp. 203 (E.D.Va.1989). In Lawrence, the court, interpreting a similar preexisting condition clause, applied it to exclude coverage for a pregnancy that preexisted the policy. The court stated:
The Maryland Court of Appeals, following numerous other jurisdictions, has *687 adopted a two-pronged test for determining whether a “sickness” (here, pregnancy) pre-existed the effective date of an insurance policy. “[T]he illness, disease or disability will ordinarily be deemed to have its inception when it first becomes manifest or active, or when there is a distinct symptom or condition from which one learned in medicine can with reasonable accuracy diagnose the disease.” Mutual Benefit Health & Accident Ass’n. v. Goldfinger, 254 Md. 272, 254 A.2d 683, 687 (1969).
... The first prong [of the test] apparently arose out of recognition of the fact that a condition of disease might preexist the issuance of a policy but that a sickness resulting from that disease would not become “manifest” or “active” until a later time. Courts considered it to be unfair to exclude from coverage sicknesses arising from a condition which was entirely latent and unknowable to the insured at the time a policy was issued. The reasons for the test’s second prong — the presence of distinct symptoms which would lead a physician to diagnose the disease with reasonable medical certainty — are somewhat less obvious. Two, however, are apparent: (1) to prevent unfairness to insurers in cases where a physician was attending the insured at the time the policy was applied for, and (2) respect for the traditional principle that insurance provides protection only against fortuitous events, not ones which are certain to happen.
Lawrence, 716 F.Supp. at 885 (citations omitted). Appellant also cites American Sun Life Insurance Co. v. Remig, 482 So.2d 435 (Fla. 5th DCA 1985) and Preferred Risk Life Insurance Co. v. Sande, 421 So.2d 566 (Fla. 5th DCA 1982). We recognize that these cases may be distinguished because of the context in which they arose but note with interest that the definition approved in each of these cases substantially followed the definition applied in ERISA cases. In Sande, the court, in a footnote, stated:
A majority of the cases recognize that a sickness should be deemed to have its inception at the time it first manifested itself or became active, or when there is a distinct symptom or condition from which one learned in medicine can with reasonable accuracy diagnose the illness. Annot., 94 A.L.R.3d 990, 998 (1979).
Id. at 568.
The trial judge’s application of the definition of “sickness” as defined in Gold would narrow the coverage afforded under this group health insurance plan. Under the trial court’s interpretation of the word “sickness,” all insureds under this policy would have to show that their condition had advanced far enough to incapacitate them so that they could not perform their usual occupation. While the trial court’s application of the definition in Gold benefits the appellees, it does not coincide with the decisions interpreting group health insurance policies governed by ERISA. See Evans, 916 F.2d at 1441.
Therefore, we hold that the trial court erred when it awarded appellees damages in the amount of $10,000 and prejudgment interest. In view of our holding we must also reverse the award of attorney’s fees appealed in Case No. 90-3093.
REVERSED.
ANSTEAD and POLEN, JJ., concur.

. Northwestern’s policy provides:
Pre-existing Conditions:
With respect to a sickness or accidental injury existing prior to becoming insured for these benefits, no expenses incurred will be considered Eligible Medical Expenses, and no benefits will be payable, except expenses incurred in connection with such sickness or accidental injury after:
(a)a period of at least 3 consecutive months has been completed on or after the effective date of his insurance, during which time the Insured or insured Dependent has incurred no expenses and received no medical treatment in connection with the sickness or accidental injury;
(b) a period of at least 12 consecutive months has elapsed, during which time the Insured or insured Dependent has been continuously insured for these benefits; or
(c) a period of at least 6 consecutive months has elapsed, with respect to an Insured only, during which time the Insured has been continuously insured for these benefits and has been continuously actively at work.