DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ENDURANCE ASSURANCE CORP.,**
Appellant,

v.

**PERRY H. HODGES, JR.,** as Personal Representative of the Estate of **NISHA SEJWAL; MARLRENIS SANCHEZ** and **PEDRO SANCHEZ,** as Personal Representatives of the Estate of **JORGE SANCHEZ; AURORA CECILIA SCARPATI RIPALDA,** as Personal Representative of the Estate of **CARLO ZANETTI SCARPATI;** and **MONICA DOMINGUEZ,** as Personal Representative of the Estate of **RALPH KNIGHT,**
Appellees.

No. 4D20-751

[March 24, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John B. Bowman, Judge; L.T. Case No. CACE19-007771.

Michael R. D'Lugo and Robert C. Bauroth of Wicker, Smith, O'Hara, McCoy & Ford, P.A., Orlando, for appellant.

Hyram M. Montero of Montero Law Center, Fort Lauderdale, Joseph S. Kashi of Joseph S. Kashi, P.A., Plantation, for appellee Perry H. Hodges, Jr., as Personal Representative of the Estate of Nisha Sejwal.

David C. Rash and Jeffrey D. Mueller of Rash Mueller, Weston, for appellees Marlenis Sanchez and Pedro Sanchez, as Personal Representatives of the Estate of Jorge Sanchez, and appellee Aurora Cecilia Scarpati Ripalda, as Personal Representative of the Estate of Carlo Zanetti Scarpati.

KLINGENSMITH, J.

A tragic mid-air collision between two airplanes underlies this dispute about the amount of insurance coverage available to compensate the victims' estates. Appellant Endurance Assurance Corporation contended the applicable insurance policy provided $1 million in coverage, while appellees argued the policy provided $2 million in coverage. The trial court sided with the appellees and found that the policy provided $2 million in coverage. We agree with appellant that the unambiguous policy language provides only $1 million in coverage, and we reverse the trial court's judgment.

Dean Aviation is a flight school with fifty-one aircraft that were all insured under a fleet policy with Endurance. *See Rhodes v. Aetna Cas. & Sur. Co.*, 437 So. 2d 155, 155 (Fla. 2d DCA 1983) (an insurance policy providing coverage for a large group of conveyances is known as a fleet policy regardless of whether it is named as such). This policy provided all fifty-one aircraft with primary liability coverage of $1 million for "each occurrence" and $100,000 for each person. It also listed these amounts fifty-one times, corresponding with the total number of aircraft operated by Dean.

In 2018, two aircraft from Dean's fleet collided over the Florida Everglades killing the two people in each aircraft. Each of the victims' estates thereafter filed wrongful death claims against Dean. Section VII of Dean's insurance policy with Endurance contained the following separability clause: "[w]hen two or more Aircraft are insured under this Policy *the terms of this Policy will apply separately to each.*" (emphasis added). *See Maine v. Hyde*, 350 So. 2d 1161, 1162 (Fla. 2d DCA 1977) (stating that similar language is found in a "typical separability clause"). Based on this clause, the personal representative of the Estate of Nisha Sejwal ("the Estate"), contended the policy provided a total of $2 million for the claims of all four estates, meaning $1 million coverage for each plane involved in the accident. The Estate filed a declaratory judgment action to establish its interpretation of the policy was correct. Endurance contested this interpretation and contended its policy only provided a total of $1 million in liability coverage for all four estates.

Endurance moved for summary judgment as to its interpretation of the amount of available policy limits and relied on several provisions within the policy. First, it pointed to a No Aggregation clause which provided "*[a] collision between two or more Aircraft shall be deemed one Occurrence.*" (emphasis added). Then, because the policy language clearly defined the collision as one occurrence, Endurance referred to other policy language limiting coverage to $1 million per occurrence and $100,000 per person. To buttress that interpretation, Endurance called attention to the policy's limitation of liability section, which provided the following "regardless" clause:

> *Regardless of the number of Insureds under this Policy, persons or organizations who sustain Bodily Injury or Property Damage*, claims made or suits brought on account of Bodily Injury or Property Damage, or Aircraft to which this Policy applies, *our liability is limited* as follows:
>
> Coverage D - *Our total liability for all damages, including damages for care and loss of services, because of Bodily Injury or Property Damage sustained by one or more persons or organizations as the*

*result of any one Occurrence shall not exceed the Limit of Liability* stated in the Declarations as applicable to "each Occurrence".

(emphasis added).

The Estate did not argue to the trial court that the accident at issue constituted more than one occurrence or that the limitation of liability provision did not apply. Instead, the Estate sought to enforce Section VII's separability clause. The Estate explained that although Endurance only issued one policy to Dean for its fleet of fifty-one aircraft, by operation of Section VII, Endurance effectively issued fifty-one separate policies to Dean—one for each plane. Thus, appellees[1] contended they should get coverage up to the policy limits of $1 million for *both* aircraft involved in the accident. Endurance countered that the separability clause relied on by appellees did not alter the stated $1 million limitation on liability.

The trial court denied Endurance's motion for summary judgment and ruled in the Estate's favor on its request for declaratory judgment. The court's final judgment declared Endurance's policy or policies afforded a total of $2 million in coverage to the four victims' estates. This appeal followed.

"[T]he 'standard of review governing a trial court's ruling on a motion for summary judgment posing a pure question of law is de novo.'" *Eco-Tradition, LLC v. Pennzoil-Quaker State Co.*, 137 So. 3d 495, 496 (Fla. 4th DCA 2014) (quoting *Shaw v. Tampa Elec. Co.*, 949 So. 2d 1066, 1069 (Fla. 2d DCA 2007)). A trial court's interpretation of an insurance policy is also subject to a de novo review. *Sidiq v. Tower Hill Select Ins. Co.*, 276 So. 3d 822, 825 (Fla. 4th DCA 2019).

For interpreting insurance policies, the Florida Supreme Court has provided the following guidance:

> Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written. Further, in order for an exclusion or limitation in a policy to be enforceable, the insurer must clearly and unambiguously draft a policy provision to achieve that result. Policy language is considered to be ambiguous . . . if the language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage. Ambiguous insurance policy exclusions are

---

[1] Although the Estate was the only party to file the declaratory judgment action and the only party to respond to Endurance's appeal, the personal representatives of the three other estates have filed a notice of joinder in this court and adopted the arguments raised by the Estate on appeal.

construed against the drafter and in favor of the insured. To find in favor of the insured on this basis, however, the policy must actually be ambiguous.

When interpreting insurance contracts, we may consult references commonly relied upon to supply the accepted meanings of words. Moreover, when analyzing an insurance contract, it is necessary to examine the contract in its context and as a whole, and to avoid simply concentrating on certain limited provisions to the exclusion of the totality of others. This Court has consistently held that in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.

*Allstate Ins. Co. v. Orthopedic Specialists*, 212 So. 3d 973, 975-76 (Fla. 2017) (internal citations, quotation marks, and brackets omitted).

In *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 36 (Fla. 2000), the Florida Supreme Court stated that "[t]he presence of these qualifying [regardless] clauses evidences an established custom in the insurance industry as to the language used by insurers in drafting clauses where the intent is to limit liability coverage to a single amount, even though multiple insured vehicles are involved in an accident."

That is the situation here. The parties agree the accident at issue constituted one occurrence. The Endurance policy's limitation of liability section contains an unambiguous qualifying clause which limited its liability "as the result of any one [o]ccurrence" to the amount "stated in the Declarations as applicable to 'each [o]ccurrence,'" "[r]egardless of the number of . . . Aircraft to which this Policy applies." The Endurance policy afforded coverage of up to $1 million for each occurrence. Although the policy also contained a separability clause confirming it applied separately to each of the fifty-one aircraft insured, the policy's limitation of liability section provides no support for the claim that the policy limits can be combined, multiplied, or aggregated because of the number of aircraft involved in an accident.

"Regardless" clauses, such as the one in Dean's policy with Endurance, "unambiguously explain[] that liability coverage is limited to a certain amount" and evince an intent to limit coverage to that amount no matter how many insured vehicles—or aircraft in this case—are involved. *See Anderson*, 756 So. 2d at 36. While appellees never explicitly state that the policy at issue is ambiguous, a finding of ambiguity is key to adopting the policy interpretation which they advance. *See, e.g., Gov't Emps. Ins. v. Sweet*, 186 So. 2d 95, 97 (Fla. 4th DCA 1966) (when the terms of a policy are irreconcilable, courts must adopt the construction which provides the most coverage). However, the clear language of the "regardless" clause found here belies any finding that the policy provisions

4

are either irreconcilable or ambiguous. *See Allstate Ins. Co. v. Orthopedic Specialists*, 212 So. 3d at 976 ("To find in favor of the insured on this basis, however, the policy must actually be ambiguous."); *Nw. Nat. Life Ins. Co. v. Rutta*, 599 So. 2d 684, 686 (Fla. 4th DCA 1992) (a court should "not artificially create ambiguity where none exists") (citation omitted).

Even when an insurance policy contains a separability clause, an insurance company may still effectively limit its liability using a "regardless" clause. *See Trinity Universal Ins. v. Capps*, 506 F.2d 16, 18-19 (7th Cir. 1974) (a policy's "regardless" clause limited liability even though the policy contained both a separability clause and "regardless" clause); *Jeffries v. Stewart*, 309 N.E.2d 448, 453–54 (Ind. Ct. App. 1974) (an insurer could have limited its liability by including a "regardless" clause in its policy).[2]

For these reasons, we reverse the final judgment entered in appellees' favor and remand with directions for the trial court to grant appellant's motion for summary declaratory judgment and enter final judgment consistent with this opinion.

*Reversed and remanded.*

CIKLIN and CONNER, JJ., concur.

*　　*　　*

**Not final until disposition of timely filed motion for rehearing.**

---

[2] To provide an example of a regardless clause, the *Jeffries* court pointed to *Hilton v. Citizens Ins. Co. of New Jersey*, 201 So. 2d 904 (Fla. 1st DCA 1967), a Florida case that distinguished *Sweet* by noting that the insurance company clearly and unambiguously limited its liability by including the regardless clause in its policy.